Kinkade, J.
 

 This is an action for the recovery of damages resulting from a breach of promise to marry. The parties to the action are residents of Portsmouth. At the time the engagement to marry was entered into, Loraine Schlichter was teaching
 
 *132
 
 in the public schools of Washington, X). C. John F. Taylor was a successful business man, engaged in the garage business, and owning and operating a Ford automobile sales agency in Portsmouth. He was the owner of a considerable amount of property, both real and personal, and paid income tax for the year 1925 on $40,000. On October 22, 1925, Miss Schlichter filed her petition against Taylor in the court of common pleas of Scioto county, in which she alleged that on or about February 10, 1923, in consideration of her promise to marry Taylor within a reasonable time thereafter, and at a time to be by her thereafter designated, Taylor promised to marry her; that she had ever since been ready and willing to marry Taylor, but that he, contrary to his promise, had on October 3, 1925, married one Edna M. Streich, to the damage of Miss Schlichter in the sum of $150,000, for which sum she prayed judgment.
 

 On November 18, 1925, Taylor filed his answer to this petition, in which he admitted that he then was a married man, that Miss Schlichter was an unmarried woman, and denied each and every other allegation of the petition, and further denied specifically that he at any time promised to marry Miss Schlichter.
 

 The jury was impaneled and the trial commenced on February 15, 1926. The next day Miss Schlichter asked leave of the court to file an amendment to her petition. This was granted by the court over objection and exception by Taylor. The amendment so filed averred that each -and every act of Taylor in promising to marry Miss Schlichter, and
 
 *133
 
 his subsequent refusal to marry her by marrying Edna M. Streieh, was ruthless, wanton, willful, and malicious. Evidently this amendment was added to form the basis for the recovery of exemplary damages.
 

 The jury returned a verdict in favor of Miss Schlichter for $70,000. The trial judge held this verdict was excessive in amount, and not sustained by sufficient evidence to the' extent of $20,000, and gave Miss Schlichter the option of remitting that amount from the verdict or submitting to a new trial of the action. Miss Schlichter adopted the suggestion of the court and remitted the $20,000, and thereupon judgment was entered on the verdict in her favor for $50,000. Taylor prosecuted error to the Court of Appeals, which court affirmed the judgment entered in the common pleas court. Taylor now prosécutes error to this court, and assigns many grounds of error. We shall mention in this opinion only such errors as we find to be well taken.
 

 This case is no exception to the general rule that in actions of this character there is usually very intense feeling manifested in the trial, riot alone by the contracting parties, but also by the witnesses called to sustain the issues presented, and that is true in this case.
 

 The pleadings in the case are models for brevity. The petition contains less than twelve printed lines, the answer less than eight, and the substance of the amendment to the petition less than four lines. Brevity ceases, however, with the pleadings.
 

 It may be said here, once and for all, that the evidence touching nearly every issue in this case is most conflicting in character. Taylor fixed the time
 
 *134
 
 that he agreed to marry Miss Schlichter about four months later than the date she stated his promise was made, and he testified that, at the time of his promise, he definitely and distinctly told her that he so promised to marry her only when his two daughters gave their assent to the marriage, to the end that he and Miss Schlichter and the two daughters might, after the marriage, all four live together in harmony and happiness as one family. Taylor testified that this condition .precedent was promptly and fully agreed to by Miss Schlichter, and that she assured him at the time that she could and would win the daughters ’ consent and would never ask him to marry unless or until she did so. Miss Schlichter denied on the witness stand that any such condition was ever imposed by Taylor or accepted by her. Taylor’s two daughters testified that they had never consented to the marriage, but had continuously opposed it. They both testified that their assent had been solicited by Miss Schlichter and refusal given, and that when asked for the reasons for such refusal they had said that her attentions to their father, as well as his attentions to her, were unseemly and offensive, at least in point of time, by reason of the very recent death of their mother, and that the earnest activities of Miss Schlichter, in apparently urging forward the consummation of the marriage, had led them to feel that the marriage, if carried out, would not bring happiness to their father. Other witnesses called by Taylor testified touching the matter of consent of the daughters, and what they knew of the actions and statements of Miss Schlichter in relation thereto. The matter of consent on the part of the daughters was a very im
 
 *135
 
 portant issue in the case, made so by the evidence. Of course, Taylor could have married without the consent of his daughters. They had no legal control over him. It is claimed by counsel for Miss Schlichter that the daughters were too young to give consent, and that the consent of the daughters was merely an afterthought invented and urged by Taylor in justification of his breach of the contract. Taylor was one of the contracting parties, and it was his right when entering into the engagement to attach any conditions to his promise which he saw fit, and the other party could either accept or reject the conditions. "Whether conditions such as claimed were imposed and, if imposed, were accepted by Miss Schlichter, were questions of fact for the jury to decide, and the trial judge was not authorized to substitute his own opinion for that of the jury on these questions of fact, nor had he the right to eliminate the issue by charging the jury that by reason of the evidence the issue had been withdrawn or waived by Taylor, and hence had ceased to be a matter for the jury to consider. ,
 

 The principal error in this case is found in the action of the trial judge at the close of all the evidence. This is best stated in the language "of the trial judge, as found in the record, that is to say:
 

 “The court is of the opinion that as a matter of law, in view of the evidence on both sides, and under the circumstances, that we will not enter upon now, that there was a contract of marriage.
 

 “You, perhaps, would have found so anyway. But it is simply to save time more than anything else.
 

 “So there will only be one question for the determination of the jury, and that is simply the meas
 
 *136
 
 ure, or amount, or damages, and on that question the court will now give to you some propositions of law.”
 

 Thus all questions of fact, save and except the amount of damages, were wholly withdrawn from the jury and decided in favor of Miss Schlichter by the trial judge. In view of the conflict in the evidence concerning the issues, other than the amount of the damage, this action of the court was clearly prejudicial error.
 

 During the cross-examination of Miss Schlichter, and for the purpose of affecting her credibility, she was asked the following question by counsel for Taylor:
 

 “I will ask you if you did not say in a letter to Edna Taylor, the present wife of the defendant, delivered by messenger and dated October 15, 1925, the following: ‘I pray the Lord each night that vengeance may descend on him [referring to defendant] and his. That ruin and desolation may follow in his wake, and that every living thing that comes in contact with him may wither and die?’ Also in the same letter, ‘Hell hath no fury like a woman scorned?’ Also in the same letter, ‘I pray to God that you have a son and he be an inbecile?’ ”
 

 Objection to the question was made and sustained, and exception saved, counsel for Taylor stating to the court that he expected the answer to be yes. It was for the jury to say whether one entertaining the extreme hatred and desire for revenge therein manifested. might not highly color or distort her testimony, regardless of the truth, in order to gain an advantage in the case. It would, indeed, be most difficult to add anything to this letter which would
 
 *137
 
 extend its scope in bitterness and insatiable desire for revenge. Tbe writer of tbe letter says tbat in her daily prayer she invokes the most horrible calamities that could possibly come to the other contracting party, and prays that these things shall attend also the innocent standing near, and even those not yet born. It is peculiarly a duty of the jury to take account of the motives and general demeanor 'of witnesses in appraising the value of their testimony in order to reach a correct conclusion as to its truthfulness and the weight it shall be given in the case. This evidence was clearly competent as affecting the credibility of Miss Schlichter, and its exclusion by the court was prejudicial error.
 

 During the second day of the trial and near the close of the cross-examination of Taylor, who had been called as plaintiff’s first witness, counsel for Miss Schlichter had the presents which Taylor had given her brought into court and piled on the trial table of Taylor’s counsel, and then stated to Taylor, in the presence of the jury:
 

 “Now, John, we return them to you and hope you will be happy with them. We are not going to have you going around and saying you gave her this, and gave her that, and gave her the other thing. We are returning them to you now. ’ ’
 

 None of these presents had been or were thereafter offered in evidence. Counsel for Taylor objected to the statement of plaintiff’s counsel, and to the attempted return of the presents in open court, as thus made. These objections were overruled and exceptions saved. The court told the jury that the transaction was a proper matter for the consideration of the jury, and later said, in the presence of
 
 *138
 
 the jury, in speaking of this incident, that counsel for Taylor would have done the same thing if in the same position. The Court of Appeals said in its opinion that this matter was erroneous and a “grand-stand play” that had no proper place in the case, and that the trial judge made it worse hy what he said to the jury on the subject. We fully agree with this statement of the Court of Appeals.
 

 Before argument, Taylor presented to the trial court, in writing, three special requests to charge, and asked that they be given to the jury before argument. Although these three requests contained correct statements of the law, the court could do nothing else, consistently, than reject them, for the reason that the issues to which they related had all been withdrawn from the consideration of the jury. We see no error on the part of the court in the refusal to give defendant’s special requests 4 and 5 before argument, which were refused.
 

 We find no error in the action of the trial court in giving plaintiff’s special requests 1 and 2. No. 2 related to exemplary damages, and was a correct statement of the law on that subject, although we think the closing sentence of No. 2, to. wit, “The entire amount of the award cannot exceed the amount claimed in the petition,” might well have been omitted. In plaintiff’s special request to charge No. 3, which was given, and which related to exemplary damages, the court instructed the jury that it might return “such an amount of damages not flagrantly excessive and disproportionate to the injury, as will mark your disapprobation, and deter others from the violation of such sacred promises.” We think this language might well have misled the
 
 *139
 
 jury into the belief that they could assess and return exemplary damages in any amount that fell short of being
 
 flagrantly excessive,
 
 and this request as drawn should'not have been given.
 

 In the general charge, the court said to the jury:
 

 “We have two kinds of damage in this case to consider, and which the jury must consider, if you want your verdict to be a lawful verdict. One is known as compensatory damages, and the other is known as exemplary damages.”
 

 It is the right of the jury to determine from the evidence whether the case is one in which exemplary damages should be awarded. While the court uses the words “must consider,” we think the jury would understand from the language employed that the court was. saying that this was a case calling for exemplary damages, and for that reason it was prejudicial error for the court to charge the jury as above quoted.
 

 In the same connection, and in speaking of compensatory damages, the court said to the jury:
 

 “In determining that [the amount of compensatory damages], you will look first at the financial condition of the defendant. You well know, most of you, perhaps all of you, what the property rights of a married woman are. The law gives to her a contingent dower interest in all the real estate that her husband owns, and a corresponding amount in his personal property.
 

 “In other words, you should put this woman in the position, financially, that she would have been had this marriage contract been consummated.”
 

 Thus the court said to the jury that, in fixing the compensatory damages, they should take the value
 
 *140
 
 of all of the husband’s property, both real and personal, and give to the plaintiff a sum equal t,o that which she would have received under the law had the marriage been consummated and the husband died owning all this property, and was survived by his wife, and the court left the amount that she would have received under the law entirely to the jury to determine. This was an incorrect statement of the law that well might mislead the jury, and that portion of the charge in this form constituted prejudicial error.
 

 Further on in the charge the court said:
 

 “The law recognizes the situation of a party who is placed in such a position as the plaintiff in this case is placed. We might say, in a facetious way, to use plain language, so the jury will readily understand it, it is more difficult to dispose of a secondhand article than it is a new one.”
 

 There is no evidence in the record that even tends in the remotest way to justify this statement thus made to the jury. The natural inference that arises from the language employed -might very easily seriously prejudice the jury against Taylor, and this part of the charge was clearly erroneous and prejudicial.
 

 The court charged the jury that there had been two breaches of this marriage contract by Taylor, one in July, 1925, and the other in September, 1925, and that the jury should take this into consideration. This was erroneous. The active courtship of the parties was interrupted by an estrangement in July, was soon thereafter renewed, and followed by á complete estrangement in September, but there were not two breaches of the contract by Taylor, as stated by the court.
 

 
 *141
 
 tn the general charge,, the court said to the jury:
 

 “Now we come to the question of punitive damages. Punitive damages growing out of a tort usually result where bad faith has been displayed— the element of fraud, or deceit,'enters into it. Now the defendant in this case had stated from the witness stand that he never did intend to marry this woman.
 

 “That, if true — and we must take him at his word —if he was paying attention to this woman, making her believe that he loved her and promised to marry her, when as a matter of fact he did not, that should be taken into consideration by the jury on the other species of damages, exemplary damages.”
 

 Counsel for plaintiff at once appreciated the scope and danger of the statement by the trial judge, and said to the court:
 

 “I don’t recall the statement of the defendant that ‘He never intended to marry her.’ ”
 

 The trial judge replied:
 

 “As I recall it, I put that question to the defendant myself. I want to be right about it. * * * I will have the record looked over in regard to this statement of the defendant. We will give this information to the jury later on. As I may be in error about it, but as I recall it, the court put that question to the defendant himself, and he said, ‘No, that he did not intend to marry her’ — that'is my recollection. If I am wrong, I will be frank to say' so.”
 

 The jurors were recalled later for further instructions, whereupon the court said to them:
 

 “There seems to be some controversy about the
 
 *142
 
 correctness of the statement of the court in regard to what it said concerning one fact, and in order to avoid any possible error in this case in regard to that statement, you will not consider what the court has said. I believe the court said to you, as a fact, that the defendant said to the jury that he did not intend to marry this plaintiff, and we will have to leave that to the recollection of the jury, and you should not be influenced in any way by what the court has said. The court may be in error about it.”
 

 The court met the challenge of plaintiff’s counsel by insisting that the court had himself put the question to the defendant and got from the defendant the answer which the court quoted to the jury. The court then said he would have the record examined, and if he found he was wrong he would “be frank to say so.” We must assume that the record was examined not only by the court, but by counsel for plaintiff as well, in search of this statement, and we must also assume that if the statement claimed had been found in the stenographic record of defendant’s testimony it would have been definitely pointed out. Evidently the portion of defendant’s testimony to which the recollection of the court applied is found on page 87 of the record, where defendant was testifying, on cross-examination, concerning a letter he wrote to Miss Schlichter, dated May 9, 1923 (Exhibit No. 28), which was prior to the time when Taylor testified he had agreed, conditionally, to marry Miss Schlichter. The question put to Taylor by the court was, “At that time was it your intention to marry this woman?” And Taylor’s answer was, “No, sir.” Taylor’s counsel
 
 *143
 
 then asked that the defendant he allowed to make an explanation. This was overruled, and exceptions saved.
 

 This falls very far short of saying what the court said to the jury, “Now the defendant in this case had stated from the witness stand that he never did intend to marry this woman, ’ ’ a statement which, if made by the defendant, would clearly and definitely brand him as a characterless scoundrel wholly unworthy of belief by the jury.
 

 The most that the court said finally to the jury was that the question whether he was correct in what he had first said to the jury would be left to the jury, and that the jury should not be governed in any way by what the court had said, adding that the court might be wrong about it, but he did not say that he had then changed his own impression, after having the record examined. The jury did not have the record to examine. They did have, in most emphatic form, the impression of the court as to what the defendant had said on the witness stand, and then they were admonished to give no heed to what the court had said in that respect.
 

 To properly estimate the effect of this incident on the minds of the jurors we should keep in mind the other very important fact, that, shortly prior to this, the court had, as stated, withdrawn all questions of fact other than the amount of the damages from the consideration of the jury, thereby indicating to the jury that the court was of the opinion that the defense of the action had completely failed and collapsed. In view of all this the inevitable happened. The jury amazed the court by the excessive amount of the verdict returned, $70,000,
 
 *144
 
 which wrong the court undertook to correct by means of a remittitur of $20,000, and entered judgment for' $50,000, which action the Court of Appeals affirmed, after holding that the errors which they found in the record were not of sufficient merit to warrant a reversal, and that the judgment in the trial court had accomplished substantial justice between the parties.
 

 The entry of á judgment does not and cannot accomplish substantial justice when the record makes clearly manifest the fact that substantive rights guaranteed by the law and the Constitution have been denied the party against whom the judgment operates. v
 

 We cannot concur in the finding of the Court of Appeals that the judgment entered in the trial court accomplished substantial justice.' The judgment will be reversed and the cause remanded for further proceedings in accord with this opinion.
 

 Judgment reversed and cause remanded.
 

 Marshall, C. J., Allen, Robinson, Jones and Matthias, JJ., concur.