HUFFMAN ET AL. *v.* THE STATE, EX REL. SQUIRE, SUPT. OF BANKS.

(Decided April 22, 1935.)

*Messrs. Newcomer & Parker,* for plaintiffs in error.
*Messrs. Gebhard & Maxwell,* for defendant in error.

CARPENTER, J.   For more than nine years prior to December 15, 1932, J. F. Huffman, one of the defendants in the trial court, a plaintiff in error here, had been assistant cashier of The Kunkle State Banking

Company, of Kunkle, Ohio. The defendant, The American Surety Company, the other plaintiff in error here, was during all that time the surety on Huffman's bond to the bank for $10,000, securing it against dishonesty of Huffman as such employee. The premiums on the bond were paid by the bank to above date.

Since the bank holiday in March, 1933, the bank has been closed, and soon after said holiday it was taken over for liquidation by the plaintiff below, the Superintendent of Banks. The superintendent brought this action alleging defalcations by Huffman in the bank's accounts in the sum of $1,511, for which, with interest, he asked judgment against Huffman and the surety company.

The amended petition sets up the terms and conditions of the bond, and a copy of it; also the specific items by which it is claimed said sum of $1,511 was embezzled by Huffman. The separate answers of both defendants admit the formal relationships of the parties substantially as alleged, including the employment of Huffman as assistant cashier of the bank and the execution of the bond, but deny the other allegations of the amended petition as amended. As a separate defense the surety company averred that prior to August 15, 1931, Huffman had misappropriated $1,600 of the funds of the bank, and that on or about that time he settled that matter with the bank by restoring to it the $1,600, but that the bank did not give the surety company notice of such default, as required by one of the conditions of the bond, and that thereby the bond became void.

The cause was tried to a jury, which returned a verdict against both defendants, and for the plaintiff for the full amount claimed, a total of $1,552.20. The surety company propounded five interrogatories to the jury relative to the claimed default prior to August 15, 1931, but the answers were, in effect, that the directors and officers of the bank did not know about

that default or the settlement of it. The defendants do not now claim anything for this defense, except that some of the items in plaintiff's claim were in fact settled by the return of the $1,600 made in 1931. The evidence does not show the items covered by that settlement, hence the defense of payment is not sustained.

The errors claimed by the defendants are:

1. Failure of the court to define the issues in the general charge, particularly as required by counsel for the surety company in asking that the issues as to Huffman and the surety company be differentiated.

In stating the issues, the trial court did not make any distinction between the defendants. The issues as to the compliance by the bank with the conditions of the bond, as to notice to the company of losses discovered, and proofs of the same, were made applicable to Huffman. That was error. If Huffman did embezzle money of the bank it could be no defense to him that notice of the discovery of that fact was not given his surety. But who was prejudiced by this error? Had the verdict been for the defendants the plaintiff might have complained, but neither Huffman nor the surety company was injured, because the bar was placed too high as to Huffman.

2. Error in the charge of the court as to notice to the surety of the discovery of the default.

The bond contains the following provisions:

"Provided however,

"(1) That loss be discovered during the continuance of this suretyship and within fifteen months immediately following the termination thereof, and that *notice* of such loss be delivered to the surety at its *home office* in the *City of New York* within *ten days* after such discovery."

An amendment to the amended petition alleges the Bank discovered $1,180 of the claimed default December 10, 1932, and on December 12, 1932, notified the Toledo, Ohio, office of the surety company of such dis-

covery, and "that the defendant The American Surety Company of New York acted on said notice and by its actions and conduct waived the requirements of said contract that such notice be delivered at the home office * * * in the City of New York."

There was evidence that discovery of $1,180 of the claimed default was made December 10, 1932, and a letter written by the cashier of the bank to the Toledo, Ohio, office of the company informing it of such discovery. This letter was received December 12, 1932, and acknowledged by letter by the manager of that office under date of December 14, 1932, and directions were given with reference to preparing and filing formal proof of claim. Formal proof of this claim was received by the New York office January 12, 1933. On this original proof, which was in evidence, having been furnished by the company on demand of the plaintiff, appears an endorsement, "Entry of Claim, 12/23/32." The evidence is silent as to how and when information of such claim got to the home office of the company. July 10, 1933, an additional $50 claimed defalcation was discovered, and July 13, 1933, a further one of $281. As to each of these, timely notices were sent to the New York office, and no complaint is made as to these two notices. In the charge on the subject of notice, the court said:

"The contract of suretyship contains a provision that the said bank, upon discovering any loss it has sustained by reason of the dishonesty of an employe, shall give notice within ten days after such discovery to the defendant American Surety Company at its home office in the City of New York. This provision is inserted in the contract for the benefit of the Surety Company, and its strict compliance on the part of the Bank may be waived by the defendant American Surety Company. If you find by a preponderance of the evidence that the bank, upon discovering loss suf-

fered by it by reason of the dishonest acts of said J. F. Huffman, gave notice to the defendant surety company within ten days after such discovery, at its office in Toledo, Ohio, and further find that such notice was received and acted on by the person or persons in charge of such office, then, as a matter of law and I so charge you, the defendant American Surety Company, by its conduct has waived the requirement of the contract of suretyship that such notice be delivered to its home office in New York City.''

There was no evidence as to the authority of the person or persons in charge of such office (meaning the Toledo office of the company) to receive or act upon such notice. In the absence of such evidence, the instruction above quoted was erroneous and prejudicial in saying to the jury that if ''such notice was received and acted on by the person or persons in charge of such office then *as a matter of law*'' the company waived the requirement as to notice. By that instruction the jury was precluded from pursuing any investigation as to what happened in the way of completing notice to the home office of the company by those in the Toledo office, or by any other authorized action by the company on the notice as given.

In positive terms the jury was told it only needed to look to what happened at the Toledo office. It was not told what ''the person or persons in charge of such office'' needed to do when they ''acted on'' such notice to constitute a waiver by the company of its right to have notice of loss given it at its New York Office. By this charge the jury might very well infer that when the Toledo manager acknowledged to the bank receipt of the notice he ''acted on'' it. In this respect that instruction was misleading to the jury in that it practically withdrew from the consideration of the jury the question whether the bank complied with that condition of the contract or the surety com-

pany waived such compliance. This was error. *Taylor* v. *Schlichter,* 118 Ohio St., 131, 160 N. E., 610. It precluded the application of the liberal rule by which a fact issue may be made as to waiver of such conditions as laid down in *Lind* v. *State Automobile Mutual Ins. Co.,* 128 Ohio St., 1, 190 N. E., 138.

Counsel for defendant in error in their brief assert that the defendants did not question the "timeliness of the notice of loss." The burden of pleading and proving such notice or its waiver was on the plaintiff. *Moody* v. *Ins. Co.,* 52 Ohio St., 12, 38 N. E., 1011, 49 Am. St. Rep., 699, 26 L. R. A., 313.

3. Errors in the admission of evidence.

Such errors were urged, but these, if there were any, were not important or prejudicial.

4. As to a large number of claims, it is asserted the verdict is against the weight of the evidence and not supported by the evidence.

This claim is not well taken.

For the error in the charge of the court noted above in Item 2, the judgment must be reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

LLOYD and OVERMYER, JJ., concur.