Taft, J.,
dissenting. It has been suggested that there are too many assignments of error in the instant case and too many pages of briefs devoted to their discussion. Probably, if only a few errors had been assigned, it would have been stressed that the trial lasted for nine weeks and the record thereof covers over 7,000 pages; and that perfection and freedom from some error in such an extensive trial would be asking for the impossible. It should be remembered that the defendant was not entirely responsible for the length of this trial or the size of the record. His first opportunity to present evidence in his defense came after 5,000 pages of the record and six weeks of trial. It might be reasonable, in a case involving a trial of this length, to determine that there probably was no ground for reversal if there were only a few errors; and it is therefore not unreasonable for defendant to endeavor to demonstrate that there were not just a few but a very substantial number of errors.
The majority opinion points out that the 29 assignments of error were combined into seven questions of law and that only three of those were stressed in oral argument. Apparently for this reason, the majority opinion discusses only those three. However, both the brief of the defendant on the merits, which endeavored to combine the 29 assignments of error into seven questions, and also defendant’s counsel in oral argument plainly stated that defendant was relying on each of his 29 assignments of error; and the briefs supporting the motion for leave to appeal and opposing the motion to dismiss, which discuss.all those assignments of error, were refiled as briefs on the merits. It is perfectly obvious that defendant, in the limited time allotted by this court for argument, could give emphasis only to a limited number of the numerous questions of law raised by his assignments of error. In my opinion, the mere fact, that such limitation of time prevented defendant’s counsel from discussing some of those questions of law in argument before this court, does not excuse this court from its obligation to give them serious consideration. As indicated by Section 2505.21, Revised Code, it is only assigned “errors not argued by brief” that “may be disregarded” by this court.
It has also been suggested that defendant’s counsel for the *303 most part argued the weight of the evidence and not questions of law. There were, as there usually would be in any trial of this length, numerous errors of law. Whether such errors of law would justify a reversal would to a substantial extent necessarily depend upon the weight of the evidence supporting the ease against the defendant. As stated in the syllabus in Hallworth v. Republic Steel Corp., 153 Ohio St., 349, 91 N. E. (2d), 690:
“3. Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.
“4. In determining whether improperly admitted and potentially prejudicial evidence did prejudice the appellant or whether substantial justice has been done the appellant as contemplated by Section 11364, General Code, a reviewing court should not weigh the other evidence or determine the credibility and effect of conflicting evidence, unless the weight, credibility and effect of that evidence is substantially in favor of the appellee.”
If, as even the majority opinion recognizes, there were errors of law in the trial of this case, then in order to affirm the judgment of the Court of Appeals this court “is required to substitute its judgment, as to the result that would have been reached if no error had existed, for a verdict of the jury * * * which never was rendered.” Hallworth v. Republic Steel Corp., supra, 358. As indicated by the above-quoted paragraphs of the syllabus, this court should not do that even in a civil case “unless the weight, credibility and effect of that evidence is substantially in favor of the appellee.” It would appear therefore that it was quite proper and should have been very helpful to this court for defendant’s counsel to argue as they did and demonstrate by record references that “the weight, credibility and effect of” the “evidence” in the instant case was not “substantially in favor of the appellee,” but, on the contrary, that ' it was “substantially in favor of the” defendant-appellant.
*304 Furthermore, as stated in paragraph one of the syllabus in Atkins v. State, 115 Ohio St., 542, 155 N. E., 189, with regard to a criminal case :
“Ordinarily this court will not consider the mere weight of evidence on review of the record of a trial below, yet, this case being one where the law requires a higher quality and a greater quantity of evidence than is required in ordinary cases where a verdict is supported by a preponderance of the proof, this court will look to the record to ascertain whether or not the rule has been disregarded.”
As stated in paragraph eleven of the syllabus in State v. Petro, 148 Ohio St., 473, 76 N. E. (2d), 355, 5 A. L. R. (2d), 425:
“In a criminal case where proof beyond a reasonable doubt is required, this court will look to the record to ascertain whether or not such rule has been disregarded. (Atkins v. State, 115 Ohio St., 542, approved and followed.)”
Also in Section 2945.04, Revised Code, it is said:
“A defendant in a criminal action is presumed to be innocent until he is proved guilty of the crime charged, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he shall be acquitted. This presumption of innocence places upon the state the burden of proving him guilty beyond reasonable doubt.
“Reasonable doubt is defined as follows: ‘It is not a mere possible doubt, because everything relating to human affairs or depending upon moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.’
“In charging a jury the trial court shall state the meaning of presumption of innocence, and read said definition of reasonable doubt.”
Admittedly this is a case in which circumstantial evidence alone is relied upon to prove that defendant killed his wife.
In State v. Nevius, 147 Ohio St., 263, 71 N. E. (2d), 258, paragraph five of the syllabus reads:
“In a criminal prosecution the corpus delicti may be es *305 tablished by circumstantial evidence where the inference of the happening of the criminal act complained of is the only probable or natural explanation of the proven facts and circumstances.”
To the same effect, see State v. Martin, 164 Ohio St., 54, 59, 128 N. E. (2d), 7.
In State v. Urbaytis, 156 Ohio St., 271, 102 N. E. (2d), 248, paragraph three of the syllabus reads in part:
“ * * * circumstantial evidence * * * by itself will not warrant a conviction unless it excludes every reasonable hypothesis except that of guilt.”
I have grave difficulty in concluding that any reasonable man could either (1) fail to have a reasonable doubt as to whether defendant killed his wife, or (2) “after the entire comparison and consideration of all the evidence * * * feel an abiding conviction to a moral certainty” that defendant killed his wife, or (3) determine that the circumstantial evidence excludes every reasonable hypothesis except that defendant killed his wife, or (4) conclude that the only probable or natural explanation of the proved facts and circumstances is that defendant killed his wife.
However, it is perfectly apparent that, unless Section 2945.04, Revised Code, and the foregoing pronouncements of law by this court are ignored, no one can say, to use the words of this court in paragraph four of the syllabus in the civil case of Hallworth v. Republic Steel Corp., supra (153 Ohio St., 349), that “the weight, credibility and effect of * * * [the] evidence is substantially in favor of the appellee.”
Certainly, the jury quite clearly indicated that it did not consider the evidence to be “substantially in favor of the” state. Thus, notwithstanding that until their verdict was returned the jurors were under the supervision of two court bailiffs and at night were sequestered in a hotel away from their families, their deliberations extended from the morning of Friday, December 17, until late on Tuesday, December 21, and included sessions throughout those and the intervening days, including Sunday, and sessions on Friday, Saturday and Monday nights. Also, notwithstanding the strong indications that the killing of defendant’s wife amounted to first degree murder, *306 the verdict against defendant was only a verdict of second degree murder.
No effort has been made to state a set of facts and circumstances that the jury could have found from the evidence and that would not only support an inference of defendant’s guilt but also exclude any reasonable hypothesis except that of defendant’s guilt. Every suggestion along that line made in the briefs and arguments of the prosecutor at most indicates that defendant “could have” killed his wife but does not exclude the reasonable hypothesis that someone else “could have” killed her. Even in a civil case, evidence on an issue such as causation will not be considered sufficient to justify submission to a jury if it will only support an inference that something “could have” been a cause. There must at least be evidence which will support a reasonable inference that it probably was a cause. See Fox v. Industrial Commission, 162 Ohio St., 569, 125 N. E. (2d), 1; Stevens v. Industrial Commission, 145 Ohio St., 198, 61 N. E. (2d), 198; Gedra v. Dallmer Co., 153 Ohio St., 258, 91 N. E. (2d), 256, 17 A. L. R. (2d), 453; Gerich v. Republic Steel Corp., 153 Ohio St., 463, 92 N. E. (2d), 393; Landon v. Lee Motors, Inc., 161 Ohio St., 82, 118 N. E. (2d), 147; Krupar v. Procter & Gamble Co., 160 Ohio St., 489, 117 N. E. (2d), 7; Bur-ens v. Industrial Commission, 162 Ohio St., 549, 124 N. E. (2d), 724.
Although the Court of Appeals in its opinion made no effort to state a set of facts and circumstances that the jury could have found from the evidence would not only support an inference of defendant’s guilt but also exclude any reasonable inference except that of defendant’s guilt, it did summarize the evidence offered by the state and, in order to suggest some basis for an inference of defendant’s guilt, endeavored to demonstrate that defendant’s story could not be reconciled with the facts and circumstances (a) that he had had his watch on the night before, (b) that that watch was found in a green bag outside his house and (c) that the watch had blood on it. In doing this, it said:
“There could be no possible way under the sequence of events as testified to by the defendant in which blood could have gotten on the watch unless it got there before the defendant had had his alleged encounter on the beach.”
*307 It is obvious that this statement and this reason for questioning defendant’s story were both based upon the assumption that the dried blood found on defendant’s watch was that of his wife. However, the record affirmatively shows no reasonable basis for any such assumption. In view of the fact that it would not be unusual for such a slight amount of dried blood as was found on the watch to be found on the watch of a surgeon, the state endeavored to establish that this blood was of the same type as that of defendant’s wife. In the absence of such evidence, it could hardly be argued with reason that the small amount of dried blood on defendant’s wrist watch was probably the blood of his wife instead of that of her killer, or even someone else whom defendant had treated in an emergency in the ordinary course of his work as a hospital surgeon.
Miss Cowan, who endeavored by tests to establish for the state that the blood on defendant’s wrist watch was of the same type as that of defendant’s wife, testified on direct examination:
“Q. Now, did you attempt to type that blood, Miss Cowan, that was found on the watch? A. I attempted a crust typing with the OAB group, and it was inconclusive * *
On cross-examination she testified:
“Q. And you found that the type of blood on the watches was the same type as Marylin Sheppard’s blood, type O? A. No, sir.”
Furthermore, the state established by its evidence facts and circumstances which cannot be reconciled with any reasonable hypothesis except that of defendant’s innocence. For example, there was admittedly blood on the knee of defendant’s pants which could have gotten there when he discovered his wife after she had been killed, because the knee was at about the height of the bed which was covered with her blood. However, there was admittedly no other blood on those pants, although the evidence indicates without contradiction that defendant’s wife’s blood spurted all over the room. Certainly there would have been blood all over the pants of defendant if he had been her assailant.
The following appears in the record, after the testimony of the bailiff as quoted in the majority opinion:
*308 “Q. The conversations that yon heard were from the side yon were on, is that right. A. That’s right.
U # * #
“Q. What it was said back to that juror, you have no knowledge of. A. No.”
The majority opinion endeavors to excuse this misconduct, in permitting jurors to converse with members of their families without first securing permission of the court, by stating that the resulting assurances of the health and welfare of their loved ones would tend to ease the jurors’ minds and make them better, more conscientious jurors. This may well be, but the statute provides that, when the cause is finally submitted and the court has permitted the jurors to separate during the adjournment of court over night “under supervision of an officer” as in the instant case, “such officer shall not permit a communication to be made to them * * * unless he does so by order of the court.” There was no such order of the court. How, in a case such as this, which the majority opinion states was conducted in an “atmosphere of a ‘Roman holiday’ for the news media” and in which the circumstantial evidence relied upon to support defendant’s conviction is so meager and equivocal, can it be said that it does not affirmatively appear from the record that the defendant was prejudiced and prevented from having a fair trial by such unauthorized and forbidden communications to members of the jury? We would be naive to assume or to presume that nothing was said about this trial to any of these jurors during the course of those unauthorized and forbidden communications to them.
A considerable amount of evidence was offered with respect to the character and reputation of defendant. Although, as stated in defendant’s brief, defendant did philander, a philanderer may have propensities for peacefulness. If defendant did have such propensities for peacefulness, as this evidence indicates, such evidence would be evidence of a circumstance tending to indicate that defendant did not commit the crime of violence involved in the instant case. Any instruction of the court that would have a tendency to influence the jury to disregard such evidence or not regard it as evidence bearing on the issue of whether defendant was guilty or innocent would be particularly damaging in a case such as this where the state *309 relies entirely on circumstantial evidence. See Harrington v. State, 19 Ohio St., 264. This would be especially true in the instant case where commission of such a violent crime by this defendant would be entirely out of character and inconsistent, not only with the events in his home during the preceding evening, but also with everything known about defendant’s previous life and his family background.
The trial court charged the jury as follows:
‘ ‘ Some evidence has been given in this case concerning the claimed general conduct and reputation of the defendant and it is proper to present such evidence for your consideration. It is not admitted because it furnishes proof of guilt or innocence but because it is a matter of common knowledge that people of good character and reputation do not generally commit serious or major crimes. Such evidence, if believed, may be of some help to you in your consideration of the total evidence and the situation as a whole. The court wishes to caution you, however, that good character and a good reputation will not avail any person charged with a crime against proof of guilt beyond a reasonable doubt.”
This charge was misleading for several reasons. Certainly, in a case where the state relies entirely upon circumstantial evidence, the circumstance that defendant has a reputation for peacefulness would be some evidence of innocence, especially with respect to a crime of such violence as that involved in the instant case. The first part of the second sentence of this part of the charge certainly tends to indicate that such reputation might not be evidence of innocence (“not * * * proof of * * * innocence”). Also, the jury may have concluded that defendant’s “character and reputation” were not “good” because of his philandering. If so, the second sentence of this charge would certainly encourage the jury to give no effect to the evidence relating to his character and reputation that would be favorable to him. So would the last sentence. Further, the caution given at the end of this portion of the charge would necessarily indicate to the jury that the circumstance of defendant’s peaceful propensities should be regarded as of secondary importance to other circumstances. Certainly, these instructions of the court were misleading.
The record discloses that the defendant specifically ex *310 cepted to this part of the charge and requested the court to charge that “evidence of reputation and character shall be considered by the jury in connection with all the other evidence in the case, and if the evidence of good reputation and character, taken in consideration with the other evidence, raises a reasonable doubt of guilt, the defendant may not be found guilty. ’ ’
This request was overruled. In giving such a charge, the court should probably have omitted therefrom the characterization of the character and reputation shown by such evidence as “good.” However, such a charge would otherwise have been substantially correct and would at least have alleviated the tendency to mislead the jury which this part of the charge as given probably had.
In the course of its charge the court said further:
“Illustrating now what would be direct evidence, let us assume that I had on a certain day a very fine cherry tree in my yard. The family happens to be away on that day and when I return about five o’clock in the evening I find my cherry tree chopped down. I proceed to investigate and first make inquiry of my next door neighbor Mr. Smith. I ask him if he saw any stranger doing anything in my yard on that day. He replies: ‘Yes, I saw George Washington chop it down with an ax.’ That would constitute direct evidence because Mr. Smith is relying on his own sense of sight and states what he himself saw with his own eyes. For that reason he is able to give direct evidence that George Washington chopped down that cherry tree.
“Let us now consider a case of circumstantial evidence in the same connection. Assume that on inquiry of Mr. Smith, my neighbor, he, in answer to my question, says that he did not see anyone chopping down my tree. I then ask him: ‘Did you see anyone about my place today.’ He replies: ‘Yes, I saw George Washington walk along your driveway from the yard to the street with an ax on his shoulder.’ Here is evidence of a fact which does not directly prove who chopped down my cherry tree but which permits a natural and fair in-inference that George Washington was in my yard with an ax combined with the fact that my tree was chopped down would constitute very definitely a piece of circumstantial evidence to be weighed in the consideration of a charge against George involving the act of chopping down that tree.”
*311 This portion of the court’s charge was most unfortunate in the instant case and quite probably had a tendency to mislead the jury. The state was contending that defendant’s guilt should be inferred largely from the circumstance of his presence in the house at the time of the killing. The jury was told in effect that George Washington could be found guilty of chopping down the tree because he was seen nearby with an ax in his possession; and the jury would thus be influenced by this example to conclude that, since defendant was nearby at the time of the killing and “could have” committed the crime even though the nature of the murder weapon was never identified by any evidence, then defendant, like George Washington, did what was consistent with the circumstance of his presence. This is especially likely to have improperly influenced the jury, since everyone has been taught that George Washington did do what was consistent with the circumstance of his presence, that is, chopped down the cherry tree.
During the course of the trial over objection of the defendant, Mrs. Ahern was permitted to testify that defendant’s wife told her that a Dr. Chapman had told defendant’s wife that defendant was thinking about a divorce.
A motion to strike this conversation was overruled.
This evidence is clearly hearsay and we can see no possible justification for its admission. See Getter v. Getter, 115 Ohio St., 468, 154 N. E., 727; Potter v. Baker, 162 Ohio St., 488, 124 N. E. (2d), 140. There is other evidence which tends to indicate an estrangement between defendant and his wife, but there is also a conflict in the evidence about that. This testimony as to what defendant’s wife had said was undoubtedly given substantial effect by the jury in determining whether there was an estrangement between defendant and his wife, which might provide a motive for defendant to kill her.
In concluding that the misconduct of the bailiff was not sufficient to justify a reversal of the judgment of the Court of Appeals, the majority opinion relies upon that portion of Section 2945.83, Revised Code, which reads:
“No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
*312 “ (E) Any other canse unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial. ’ ’
With regard to the hereinbefore mentioned errors in the court’s charge and in the admission of evidence, the applicable language of that statute is substantially different and reads as follows:
“(C) The admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby;
“(D) A misdirection of the jury unless the accused was or may have been prejudiced thereby * *
It is quite apparent that, in a case such as this, it would be impossible to reach any other conclusion but that this defendant “may have been prejudiced” by the foregoing errors in the court’s charge and by the admission of the foregoing hearsay evidence. There are other assignments of error which may be well taken, but it appears to me that in a case such as this it is sufficient to recognize that it would be impossible or unrealistic to say that there was no prejudice to this defendant from the foregoing errors.
Undoubtedly a retrial of this cause could be conducted with less of the “atmosphere of a ‘Roman holiday’ ” referred to in the majority opinion. The witnesses have already testified once and so one of the principal elements of suspense, which was an important factor in generating that atmosphere, would be absent. There should therefore be less question after such trial, than there undoubtedly now is as to whether this defendant was accorded a fair trial. If, as he apparently does, defendant .desires another opportunity to establish his innocence, even at the risk of his life (State v. Behimer, 20 Ohio St., 572), this court should not deny him that opportunity by summarily determining that the errors at his trial were not prejudicial. On the record before this court, such a determination would represent in my opinion a mere and a highly doubtful guess.
Hast, J., concurs in the foregoing dissenting opinion.