DECISION AND JUDGMENT ENTRY
This matter arose as a result of an automobile collision that occurred on October 17, 1995, between Debra Schumacker ("appellee") and Brent A. Zoll, who at the time was operating a dump truck for Sylvester Material Co., Inc. ("Sylvester"). This is an appeal from the judgment of the Lucas County Court of Common Pleas which, following a jury verdict and a hearing on appellees' motion for prejudgment interest, granted appellees, Debra and Larry Schumacker, judgment against appellants, Brent Zoll and Sylvester, in the amount of $600,000, plus prejudgment interest. For the reasons that follow, we affirm the decision of the trial court.
Appellants appeal the jury verdict and the decision of the trial court granting prejudgment interest and raise the following assignments of error:
"Assignment of Error 1:
 "The Trial Court erred when it granted prejudgment interest in favor of Appellees and in its decision ordered that Appellants pay post-Judgment interest on the prejudgment interest. Opinion and Judgment Entry, May 30, 2000. Appendix B.
"Assignment of Error 2:
 "The Trial Court erred by allowing Appellees' expert economist to testify with respect to additional theories that had not been disclosed prior to trial by the Appellees. Tr. 262, 263, 267, 270.
"Assignment of Error 3:
 "The Trial Court erred in refusing to instruct the jury on Appellees' duty to mitigate damages. Tr. 466-467, 573.
"Assignment of Error 4:
 "The Trial Court erred by denying Appellants' Motion In Limine and permitting Dr. Spetka to testify with respect to causation of Appellee's herniated disc including the possibility of future disc surgery and the permanency of Appellee's neck pain. Motion In Limine. Motion Hearing Tr. 32.
"Assignment of Error 5:
 "The Trial Court erred by giving repetitive jury instructions that included Appellees' claimed damages and theory of the case.
"Assignment of Error 6:
 "The Trial Court erred by striking all testimony and exhibits regarding an accepted and relied upon computer program by Appellants' vocational expert. Tr. 547.
"Assignment of Error 7:
 "The Trial Court erred when it failed to take curative measures during Appellees' counsel's closing argument and voir dire. Tr. 610, 614-615, 671.
"Assignment of Error 8:
 "The Trial Court erred by allowing Plaintiffs' counsel to read three pages of testimony that had already been presented to the jury while cross-examining a witness. Tr. 524-526.
 First Assignment of Error
Upon appellees' filing of a motion for prejudgment interest, the trial court conducted a hearing and entered judgment for appellees. The trial court found that both parties cooperated in discovery proceedings, that neither delayed the proceedings, and that appellees' demand was "extremely reasonable"; however, the trial court found that John O'Leary, the adjuster for Heritage Insurance (appellants' insurer), failed to rationally evaluate the risks and potential liability and that appellants never made a good faith offer to settle the case. In their first assignment of error, appellants disagree with the trial court's findings and argue that the trial court erred by granting prejudgment interest and erred in awarding post-judgment interest on the prejudgment interest amount.
a. Disclosure of Confidential Mediation Communication
Prior to discussing the merits of appellants' first assignment of error, we must first address an important issue that presents itself in this case. In the hearing before the trial court regarding prejudgment interest, there is a great deal of testimony concerning a mediation that took place between the parties with an independent mediator. This evidence was presented over objection by appellants' counsel, who stated, "* * * I object as hearsay what [the mediator] Judge McQuade told him. Mediation is confidential requirement."
R.C. 2317.023(B) states that a "mediation communication is confidential." A "mediation communication" is "a communication made in the course of and relating to the subject matter of a mediation."[1]
R.C. 2317.023 further states, in pertinent part, that "no person shall disclose a mediation communication in a civil proceeding or in an administrative proceeding" unless "* * * all parties to the mediation and the mediator consent to the disclosure"[2] or "* * * a court, after a hearing, determines that the disclosure does not circumvent Evidence Rule 408, that the disclosure is necessary in the particular case to prevent a manifest injustice, and that the necessity for disclosure is of sufficient magnitude to outweigh the importance of protecting the general requirement of confidentiality in mediation proceedings."[3]
Appellees argue that Am.Sub.H.B. No. 350 enacted R.C. 2317.023 and, insofar as Am.Sub.H.B. 350 was ruled to be unconstitutional by State exrel. Ohio Academy of Trial Lawyer v. Sheward (1999), 86 Ohio St.3d 451, appellees assert that R.C. 2317.023 is unconstitutional. Upon review of the legislative history of R.C. 2317.023, we find that appellees are incorrect. The Ohio General Assembly actually enacted R.C. 2317.023 in Am.Sub.H.B. No. 438, which was filed on August 1, 1996 and became effective on October 31, 1996. Whereas, Am.Sub.H.B. 350 was filed on October 28, 1996 and became effective on January 27, 1997. Am.Sub.H.B. 438 stated that the effective date of R.C. 2317.023 was July 1, 1997. Subsequently, Am.Sub.H.B. 350 was enacted and stated with respect to R.C. 2317.023 that "Sections 1 and 2 of Am.Sub.H.B. 438 of the 121st General Assembly shall take effect on July 1, 1997, except that section2317.023 of the Revised Code, as amended by Am.Sub.H.B. 438 of the 121st General Assembly, shall take effect on the effective date of Am.Sub.H.B. 350 [1-27-97] of the 121st General Assembly." Hence, Am.Sub.H.B. 350 made no changes to the language of R.C. 2317.023; rather, it only changed the effective date. Insofar as Sheward held Am.Sub.H.B. 350 to be unconstitutional in toto, we find that the effective date of R.C. 2317.023
remains as it existed in Am.Sub.H.B. 438, July 1, 1997, rather than the effective date set forth in Am.Sub.H.B. 350, which was January 27, 1997.
As held by the Ohio Supreme Court, in enacting R.C. 2317.023, "the General Assembly has determined that confidentiality is a means to encourage the use of mediation and frankness within mediation sessions."[4] "Parties to a mediation must be confident that the information they are sharing will not be revealed outside of the mediation, especially to the court."[5] Confidentiality is clearly the cornerstone of successful mediation. Without it, the effectiveness of mediation is greatly eroded.
Therefore, absent an exception to the general rule, R.C. 2317.023
clearly prohibits the disclosure of all mediation communications in this case. It is not clear from the record who first violated R.C. 2317.023
by breaching confidentiality, the mediator through direct communication with the trial court, or appellees through their motion for prejudgment interest. Nevertheless, insofar as appellants objected to questions concerning mediation, all parties obviously did not agree to disclose the content of the mediation negotiations.[6] Moreover, the trial court made no specific findings that the disclosure did not circumvent Evid.R. 408, that the disclosure was necessary to prevent a manifest injustice, or that the necessity for disclosure was of sufficient magnitude to outweigh the importance of protecting the general requirement of confidentiality in mediation proceedings.[7] Hence, having found no exception in this case to the rule that mediation communications are confidential and that confidentiality was not waived by all the parties to the mediation, as required by R.C. 2317.023, we find that the trial court erred, as a matter of law, by allowing and considering testimony regarding the mediation and the communications therein and by relying on that information in rendering its decision regarding prejudgment interest. Therefore, insofar as it violates R.C. 2317.023, we order that all reference to any mediation communication be stricken from the trial court's judgment entry and from the hearing transcript.
b. Award of Prejudgment Interest
Having removed all reference to the mediation and communications made therein, we must consider whether or not there was other sufficient evidence for the trial court to correctly grant prejudgment interest in this case. We find that there was.
To award prejudgment interest, the trial court must find that the party required to pay the judgment failed to make a good faith effort to settle the case, and the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.[8] In this regard, the Ohio Supreme Court has stated:
 "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."[9]
The determination to award prejudgment interest rests within the trial court's sound discretion.[10] Absent a clear abuse of that discretion, the lower court's decision in the matter should not be reversed.[11]
The trial court held that both sides cooperated in discovery proceedings and did not unnecessarily delay the proceedings. Appellants, however, argue that appellees failed to cooperate during discovery by not seasonably supplementing their interrogatory responses to include appellee's complaint regarding her neck injuries, and by not disclosing their intention to have their economist expert, Dr. Robert Ancell, testify at trial.
With respect to appellee's disclosure of her neck injury, appellee testified that she had complained of neck pain immediately following the collision and had complained of neck pain to her family doctor, Dr. Jonathon Rohrs continually; however, it was not until after October 1997, when she was released from the care of Dr. Thomas A. Houston for her arm injuries, that Dr. Rohrs sent her for a magnetic resonance imaging ("MRI") on January 26, 1998. The MRI disclosed that appellee had a herniated cervical disc. Appellants were notified on February 17, 1998 that appellee underwent an MRI and had a herniated disc. Appellees' first demand for settlement was not made until December 15, 1998. Under the circumstances, appellants were clearly made aware of appellee's neck injuries in a timely fashion.
With respect to their use of Dr. Ancell's testimony, both counsel stated that there was an agreement that appellees' counsel would notify appellants' counsel prior to trial of his intention to have Dr. Ancell testify. Appellees' counsel testified that he was undecided about using Dr. Ancell as a witness until just before trial, which did not allow appellants' counsel sufficient time to schedule a deposition with Dr. Ancell. Appellants' counsel, however, was able to interview Dr. Ancell over the phone.
Appellants complain that Dr. Ancell's testimony differed from his report that they had previously received. Appellees' counsel, however, explained during the prejudgment interest hearing that, at the time Dr. Ancell prepared his report, appellee was still treating and had not yet returned to work. Obviously Ancell's report regarding appellee's ability to work would change depending on the circumstances that existed after her arm healed. Despite appellees' agreement to notify appellants of their intention to use Dr. Ancell at trial, we find that Dr. Ancell was disclosed as a possible witness a sufficient length of time prior to trial to have allowed appellants to depose him. It was appellants' choice not to secure Dr. Ancell's deposition at an earlier time and rely on the informal agreement between counsel. We also note that appellants acquired a vocational expert of their own who testified at trial regarding appellee's ability to work.
Based on the foregoing, we find that the trial court was within its discretion in finding that appellees fully cooperated in discovery proceedings.
Appellants also argue that the trial court erred in finding that O'Leary failed to rationally evaluate the risks and potential liability and failed to make a good faith monetary settlement offer. Appellants assert that O'Leary rationally evaluated the risks and potential liability by using his experience as an adjuster and by looking at verdict and settlement amounts of comparable cases. Appellants also assert that they considered it futile to raise their offer of $94,000 because appellees were holding firm on their demand of $375,000.
The injuries in this case were extensive and included a shattered left arm (appellee's dominate hand), with compound fractures of her radius and ulna, a punctured and collapsed lung, a fractured skull, a fractured eye orbit, a fractured pelvis, numerous lacerations, and a neck injury which ultimately was diagnosed as a herniated disc at C4-C5. Appellee underwent four surgeries on her arm, the initial surgery, a surgery to remove the bar that held her arm stationary, an ulna-shortening surgery, and a bone graft from her right hip to her ulna. Appellee was not released from her doctor's care for those injuries to her arm until two years after the collision. She underwent rehabilitation for her arm and had to wear a bone stimulator for months to encourage bone growth. Appellee was off work from the time of the collision until July 1997, except for four months in 1996 when she was permitted to work between surgeries. Appellee also suffered from depression, long-term pain, scarring, permanent disfigurement and loss of range of motion in her left arm. Appellee may also require future surgery to repair her herniated disc. Appellee's medical bills exceeded $40,000 at the time of trial.
This was a case of clear liability with no issue of comparative negligence. O'Leary testified that he based the settlement offers on his experience in valuing similar cases and based upon his review of Ohio jury verdicts. O'Leary testified that he took into consideration all of appellee's injuries, medical bills, and lost wages; however, despite evidence to the contrary, O'Leary testified that he doubted that appellee's neck injuries were caused by the collision.
Upon review of the comparable cases considered by O'Leary, we agree with the trial court that none of the settlements or verdicts O'Leary compared this case to had the extensive injuries and/or clear liability that were present in this case. In a more similar comparable case, for instance, the plaintiff had numerous fractures in the hip, arm, ankle, leg, and nose, $36,000 in medical bills, permanent scarring, and a limp. The case settled for $365,000, even though an issue of assumption of the risk was a factor to consider. O'Leary testified that this settlement was high because an insurance company was the defendant. Nevertheless, even with this sort of comparable case, O'Leary testified at the prejudgment interest hearing that he evaluated appellees' case between $150,000 and $175,000. In a memorandum dated February 15, 1999, however, O'Leary stated that he believed "the case [had] a settlement range of between $200,000-$300,000." During settlement negotiations, O'Leary maintained his valuation of the case over appellants' counsel's objection, who valued the case between $250,000 and $400,000. Despite O'Leary's valuation of the case between $200,000 and $300,000, appellants only offered $94,000 until right before trial, and then offered a maximum of $200,000.
Based on the foregoing, we find that the trial court had sufficient evidence, even without the confidential communications from the mediation, and did not abuse its discretion by finding that appellants failed to rationally evaluate the risks and potential liability and failed to make a good faith monetary settlement offer.
With respect to appellees' evaluation of the case, we find that based on the extent of appellee's injuries, the permanency of those injuries, her lost wages, diminished working ability, and comparable cases, the trial court did not abuse its discretion in finding that appellees rationally evaluated the risks and potential liability. Additionally, we find that the trial court did not abuse its discretion in finding that appellees responded in good faith to appellants' settlement offers. Appellees' initial demand was $500,000, which was reduced to $375,000. Appellees never reduced their claim further, even when appellants offered more immediately before trial, because, as appellees argued, doctor depositions taken during the negotiations period strengthened their case. The trial court agreed that appellees' failure to decrease their demand further was justified.
Accordingly, we find that the trial court was within its discretion to award appellees prejudgment interest.[12]
With respect to the award of prejudgment interest, appellants additionally argue:
 "* * * the Trial Court ordered that the prejudgment interest be added to the initial verdict of $597,000 (reduction was due to an advance) and then ordered that interest accrue on both amounts. The statute does not allow for interest on top of interest. Rather, the court can only order prejudgment interest and post judgment interest separately. The Court cannot grant post judgment interest for unpaid prejudgment interest."
The trial court ordered as follows:
 "* * * plaintiffs are awarded prejudgment interest in the total amount of $276,156.59, in addition to the net verdict in the amount of $597,500.00, for a total of $873,656.59, plus 10% interest from this date. The prejudgment award of $276,156.59 represents 10% on the net verdict of $597,500.00, from the date of the crash on October 17, 1995, through today's date of May 30, 2000 (and thus includes 10% interest from the date of the verdict of October 28, 1999)."
R.C. 1343.03(A)[13] states that "when money becomes due and payable * * * upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten percent per annum * * *." We find nothing in the statute that prohibits the trial court from combining the amount of the jury verdict and the award of prejudgment interest into a single judgment and then ordering interest to accrue on that amount. Moreover, other courts have held that "prejudgment interest shall be merged with the underlying damage award for purposes of postjudgment interest."[14] As such, "[w]hen interest is in fact a part of the debt owed, awarding interest upon the interest that is a part of the debt is not compounded interest."[15]
Based on the foregoing, we find that there was competent credible evidence upon which the trial court could rely in granting prejudgment interest. We further find that the trial court correctly awarded post-judgment interest on the combined amount of the prejudgment interest and the jury verdict. Accordingly, we find appellants' first assignment of error not well-taken.
 Second Assignment of Error
Appellants argue in their second assignment of error that the trial court erred by allowing Dr. Ancell, appellees' economist, to testify because (1) Dr. Ancell testified to new theories he had not disclosed in his initial report, (2) appellees failed to supplement their interrogatory responses regarding Dr. Ancell's new opinions, and (3) appellees ambushed appellants by waiting until just prior to trial to inform appellants that they intended to call Dr. Ancell, which did not allow time for a deposition. With respect to Dr. Ancell's "additional theories," appellants argue that they were not aware that Dr. Ancell would testify that appellee would suffer a loss of potential earnings based upon a career at which she was never previously employed and for which she had never received training.
Dr. Ancell saw appellee on May 24, 1997, prior to her being released to return to work. Dr. Ancell reported that appellee had a Bachelor of Science in Education and an Associate's Degree for clinical medical assistant, with the goal of becoming a phlebotomist. He also reported that appellee was given a "Career Assessment Inventory" and scored highest in the "Investigative and Social categories." As such, he noted that appellee preferred occupations such as laboratory research worker, medical technician, computer programmer, dental hygienist, drafter, chemist, mathematician, and other scientific occupations. With respect to appellee's limitations, Dr. Ancell reported that appellee had "sustained very significant vocational limiting problems" and that "[g]iven the nature and extent of her current problems, she is basically limited to jobs that don't put a premium on the use of both upper extremities."
At trial, Dr. Ancell testified regarding what appellee's income would have been had she remained employed in the job she had prior to the accident, at forty hours per week, and compared that amount to what she would make in the job she held at the time of trial, which she worked at only thirty-two hours per week. Dr. Ancell was then asked to assume that appellee would have liked to go back to school and taken additional courses to enable her to become a certified lab technician. Making such an assumption, Dr. Ancell was asked what amount of money appellee could have expected to make as a certified lab technician and compared that amount to what she was making at her job at the time of trial.
Appellants counsel objected to this line of questioning, but did not specify the nature of the objection. Rather, counsel objected to Dr. Ancell's testimony on the basis that he was not qualified to calculate earning capacity and that he was testifying to a matter that was simply a mathematical calculation, which the jury could do on their own.
Decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion.[16] An abuse of discretion means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is arbitrary, capricious or unconscionable.[17]
Evid.R. 103(A) states that error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a "timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context."[18] In determining whether a substantial right of the party has been affected, a reviewing court must decide whether the trier-of-fact would have probably reached the same conclusion had the error not occurred.[19]
In this case, appellants' counsel generally objected, however, they did not specify that they objected on the basis that Dr. Ancell's testimony was not previously disclosed, that appellants were ambushed by his testimony, or that appellees failed to supplement their interrogatory responses. Accordingly, insofar as appellants failed to state the specific grounds of his objections, and since the specific grounds were not apparent from the context, we find that the trial court did not abuse its discretion in admitting Dr. Ancell's testimony.
Moreover, as mentioned above, appellants knew of Dr. Ancell, but never insisted on taking his deposition. Appellants also knew that he was testifying as to appellee's loss of earnings. If appellants had deposed Dr. Ancell, they would have been aware of the amounts and the nature of those amounts about which he was planning to testify. Accordingly, we find appellants' second assignment of error not well-taken.
 Third Assignment of Error
In their third assignment of error, appellants argue that the trial court erred in refusing to instruct the jury on appellee's duty to mitigate damages regarding her employment.
Appellee testified that she had been employed full-time prior to the collision. Once she was released from her doctor's care, because of physical fatigue, she was limited to part-time employment. Her employer at the time of trial accommodated her regarding her physical limitations in a part-time position. After having been at her employer's for about a year, appellee felt that she could work full-time. She testified that she contacted St. Vincent's Human Resources Department regarding full-time employment, but was notified that there were no positions at that time. Appellee also testified that she considered changing jobs; however, she was concerned about her ability to obtain a job with her limitations and never sought new employment.
Appellants sought an instruction regarding appellee's duty to mitigate her damages. Ohio Jury Instructions 253.18, Section 7, states "[a] person who has been injured has a duty to use reasonable efforts under all the circumstances to lessen damages." The trial court denied appellants' request to include such an instruction, stating, "The measure of such damage is what the evidence shows with reasonable certainty to be the difference between the amount she was capable of earning before she was injured and the amount she's capable of earning in the future in her injured condition."
We find that the trial court correctly stated the law with respect to loss of earnings.[20] Appellants cite no authority for their argument that a mitigation instruction must be given along with a loss of earnings instruction.
The jury heard appellee's testimony that she could work full-time within her type of job if a position was available. The jury also heard that she chose not to seek other full-time employment. We agree with the trial court that these issues concern lost earnings and not mitigation of damages.
Accordingly, appellants' third assignment of error is found not well-taken.
 Fourth Assignment of Error
Appellants argue that the trial court failed to grant appellants' motion in limine regarding Dr. Lawrence Spetka's testimony. Appellants argue that Dr. Spetka's opinions lacked "the usual degree of medical certainty" regarding causation of appellee's herniated disc, need for future surgery, and permanency of appellee's neck pain. Appellants assert that the trial court denied appellants' motion; however, there is no journal entry denying appellants' motion and no transcript of the hearing held regarding this motion was filed with this court. Nevertheless, denial of a motion in limine does not preserve error for review; rather, a proper objection must be raised at trial to preserve error."[21]
Appellants did not make the specific objections raised in their motionin limine immediately prior to the presentation of Dr. Spetka's video-taped testimony; however, the trial court did overrule the objections appellants made within and during the course of Dr. Spetka's deposition. Within the deposition, appellants objected when Dr. Spetka was asked if appellee's injury was accurately depicted on the MRI. Appellants objected to the form of the question when Dr. Spetka was asked if he could tell what future problems appellee could reasonably expect to experience. Appellants also objected when Dr. Spetka was asked if he agreed that, if appellee's daily therapy did not correct her neck pain, the likely cause of appellee's pain would be the herniated disk. And, finally, appellants objected when Dr. Spetka was asked if he would recommend surgery, as one of the courses of future treatment, if appellee came back to him with neck pain.
To the extent that the trial court overruled these objections immediately prior to the presentation of Dr. Spetka's deposition, we find that these objections were preserved for purposes of appeal. With respect to these objections, appellants argue that Dr. Spetka's testimony is improper and should be excluded because he failed to testify to a reasonable degree of medical certainty. In questioning Dr. Spetka, appellees' counsel instructed him that when he expressed an opinion, it must be "to a reasonable degree of medical probability."
An expert opinion is competent only if it is held to a reasonable degree of scientific certainty.[22] The Ohio Supreme Court has held that, "in this context, `reasonable certainty' means `probability.'"[23]
Accordingly, we find that the trial court did not abuse its discretion in admitting Dr. Spetka's testimony. As such, we find appellants' fourth assignment of error not well-taken.
 Fifth Assignment of Error
Appellants argue in their fifth assignment of error that the trial court abused its discretion by repeating appellees' claimed injuries and damages in a summary fashion when giving an instruction on each element of damages. Appellants argue that the repetitious nature of the charge "clearly prejudiced the appellants and improperly influenced the jury."
Civ.R. 51(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give an instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." "[F]ailure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal."[24]
At no time did appellants object to the "repetitious nature of the charge." Accordingly, they waived this issue for purposes of appeal. Appellants' fifth assignment of error is therefore found not well-taken.
 Sixth Assignment of Error
Appellants argue in their sixth assignment of error that the trial court erred by striking all testimony and exhibits regarding an accepted and relied upon computer program, Life Steps, by appellants' vocational expert, Denise Buccini. Buccini testified that her company bought the computer program from another company. Relying on the information gathered from the computer program, Buccini testified that the position of medical assistant is "becoming a more used occupation" and that "there are more positions available." Buccini presented an exhibit to the jury in this regard. Appellees' counsel objected to Buccini's testimony that relied upon the Life Steps program. The trial court allowed appellants' counsel to lay further foundation regarding the program, but cautioned that it was subject to being stricken.
Upon conclusion of the testimony, the trial court held that the exhibit using the Life Steps information would be excluded and that the jury would be instructed to disregard all testimony with regard to Life Steps. The trial court stated, "It's my feeling there's been an inadequate foundation laid for that. It relies on hearsay and there's no testimony that Ms. Buccini has any particular insight as to how the program is compiled or what data is included."
When instructing the jury, the trial court stated:
 "One final aspect as to the expert testimony in this case. You are now instructed that a portion of witness Denise Buccini's testimony referencing the Life Steps computer program has been stricken from this case and you are specifically instructed that you are not to consider it in any way during your deliberations. Also, the related boards that were used as visual aid exhibits are not to be, relative to Life Steps computer program, are not to be considered either."
After the jury instructions were read, appellants' counsel objected to the trial court's instruction regarding Life Steps for the following reason:
 "* * * you had instructed the jury not to consider the boards, and in chambers you only excluded one exhibit. There is concern that the jury may disregard all of it."
As such, the trial court made the following corrective statement to the jury:
 "With regard to the Court's indication that the testimony of Ms. Buccini regarding the Life Steps computer program has been stricken from the case and you are not to consider it, and the Court's subsequent reference to the exhibit, that should have been properly couched exhibit. There was, I believe, just one single board that was presented to the jury that related to the Life Steps computer program, but the Court's admonition remains the same, that is that you are not to consider that for any purpose. It is not in evidence."
The admission of expert testimony is within the sound discretion of the trial court.[25] Upon a review of Buccini's testimony, we find that the trial court did not abuse its discretion in excluding the evidence adduced regarding the Life Steps program.
Appellants additionally argue that an undue burden was placed upon the jury to determine what portion of Buccini's testimony was to be disregarded and that the instruction was misleading insofar as the trial court referred to multiple boards. Appellants argue that "the jurors may have believed that they were not to consider any visual aide exhibits discussed by Ms. Buccini and offered as evidence." We disagree. Upon review of the transcript, it is easily ascertainable what portion of Buccini's testimony concerns Life Steps. Moreover, with respect to the trial court's reference to exhibits, the trial court issued a corrective instruction.
We therefore find that the trial court did not err in excluding a portion of Buccini's testimony. We further find that the trial court's instructions were not misleading or highly prejudicial, as appellants suggest. Accordingly, appellants' sixth assignment of error is found not well-taken.
 Seventh Assignment of Error
Appellants argue in their seventh assignment of error that the trial court erred when it failed to take curative measures during appellees' counsel's closing argument and voir dire. Specifically, appellants argue that, during closing arguments, appellees' counsel (1) referred specifically to appellants' counsel, rather than to appellants; (2) criticized the fact that Sylvester's human resources person, rather than its president, was present in court; (3) attacked appellants' credibility and truthfulness; and (4) filtered his argument with prejudice and passion designed to inflame the jury against a trucking company.
Counsel should be afforded great latitude in closing argument.[26]
Determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court and will not be overturned absent an abuse of that discretion.[27]
Appellants only objected once to appellees' counsel's closing arguments. In discussing what kind of things people spend money on, appellees' counsel had stated, "They pay executives of trucking companies big tens of millions of dollars per year." Appellants' sole objection was sustained by the trial court, which stated, "There's no evidence in this case as to the income of trucking executives." Appellants argue that the trial court should have admonished appellees' counsel "with respect to his continual passion pleading to the jury, especially informing the jury of facts not in evidence." We, however, find that the trial court's sustaining of appellants' objection was sufficient.
Insofar as appellants failed to object to the remainder of appellees' counsel's closing argument, we find that ordinarily appellants' arguments would be waived for purposes of appeal.[28] However, under appropriate circumstances, "a trial court is bound, sua sponte, to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct."[29] Only where counsel "grossly and persistently abuses his privilege" during closing argument is the trial court required to suasponte intervene.[30] Remarks made only once are not considered a gross and persistent abuse of privilege.[31]
Upon review of the transcript, we find that appellees' counsel's closing statements did not require sua sponte intervention by the trial court as they were within the bounds of permissible argument and were not a gross or persistent abuse of his privilege. Moreover, we find that the challenged statements were not so flagrant, within the reasoning of Jonesv. Macedonia-Northfield Banking Co. (1937), 132 Ohio St. 341, as to require the trial court to intervene sua sponte. We therefore find that the trial court, in this case, did not abuse its discretion and was not required to sua sponte intervene "to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct."[32]
Appellants additionally argue that voir dire was prejudicial because (1) appellees' counsel sought to "commit the jury to a certain view of the evidence" and asked the potential jurors to promise that they would include certain elements of damages; (2) the trial court introduced appellees, but did not know the representative from Sylvester; and (3) the trial court stated that the reason Zoll was not present at trial was because he chose not to appear. Insofar as appellants failed to object during voir dire, we find that they waived their argument for purposes of appeal. Moreover, we find that the statements by the trial court were not prejudicial.
Accordingly, we find appellants' seventh assignment of error not well-taken.
 Eighth Assignment of Error
Appellants argue that the trial court erred by allowing appellees' counsel to read three pages of testimony, that had already been presented to the jury, while cross-examining Buccini. It is well settled that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court."[33] Buccini testified that appellee had no restrictions with respect to lifting, pushing or pulling. In cross-examining Buccini, appellees' counsel read testimony from Dr. Frank C. Hui that indicated appellee sustained permanent injury to her arm, including loss of muscle bulk, strength, agility, and pain. The trial court allowed counsel to read Dr. Hui's testimony and found that it was relevant with respect to "the root of [Buccini's] assumptions with regard to [appellee's] condition." We find that the trial court did not abuse its discretion in allowing this portion of Dr. Hui's testimony to be read during cross-examination. Appellants' eighth assignment of error is therefore found not well-taken.
 Conclusion
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J.
Richard W. Knepper, J., Mark L. Pietrykowski, P.J., JUDGES CONCUR.
[1] R.C. 2317.023(A)(2).
[2] R.C. 2317.023(C)(1).
[3] R.C. 2317.023(C)(4)
[4] State ex rel. Schneider v. Kreiner (1998), 83 Ohio St.3d 203,208.
[5] Duncan v. Vernon Township Trustees (Jan. 16, 2001), Clinton App. No. CA2000-05-015, unreported, fn. 1.
[6] See R.C. 2317.023(C)(1).
[7] See R.C. 2317.023(C)(4).
[8] Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,658.
[9] In Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus.
[10] Scioto Mem. Hosp. Assn., Inc. v. Price Waterhouse (1996),74 Ohio St.3d 474, 479.
[11] Mobberly v. Hendricks (1994), 98 Ohio App.3d 839, 845.
[12] Moskovitz, supra.
[13] Version prior to Am.Sub.H.B. 350.
[14] Nakoff v. Fairview Gen. Hosp. (1997), 118 Ohio App.3d 786, 788, citing Singer v. Celina Group d.b.a. Natl. Mut. Ins. Co. (May 30, 1995), Stark App. No. 0333, unreported.
[15] Id.
[16] Bostic v. Connor (1988), 37 Ohio St.3d 144, paragraph three of the syllabus; O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163.
[17] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[18] Evid.R. 103(A)(1).
[19] O'Brien, supra at 164-165, citing Hallworth v. Republic SteelCorp. (1950), 153 Ohio St. 349, paragraph three of the syllabus.
[20] See Hanna v. Stoll (1925), 112 Ohio St. 344.
[21] State v. Brown (1988), 38 Ohio St.3d 305, paragraph three of the syllabus.
[22] See State v. Holt (1969), 17 Ohio St.2d 81, syllabus.
[23] State v. Benner (1988), 40 Ohio St.3d 301, 313, citing Holt,supra.
[24] Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121.
[25] See Bostic, supra.
[26] Pesek v. Univ. Neurologists Assoc., Inc. (2000), 87 Ohio St.3d 495,501, citing, State v. Champion (1924), 109 Ohio St. 281, 289.
[27] Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph three of the syllabus.
[28] See Goldfuss, 79 Ohio St.3d at 121. See, also, Snyder v.Stanford (1968), 15 Ohio St.2d 31, paragraph one of the syllabus.
[29] Snyder, supra at 37.
[30] Snyder, supra at paragraph one of the syllabus.
[31] Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36,40.
[32] See Snyder, supra, paragraph one of the syllabus.
[33] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus.