Tart, J.
 

 Four questions are raised on this appeal:
 

 1. Was there sufficient evidence to justify submission to the jury of the question of a proximate causal relationship between decedent’s death and an injury arising out of his employment?
 

 2. Did the court err in admitting in evidence three pages from a medical book?
 

 3. If so, was that error prejudicial so as to justify reversal of the judgment for plaintiff?
 

 4. If it was, was defendant’s motion for a new trial filed within the time required by law?
 

 On March 11, 1943, decedent was employed as a rigger working on a damper in defendant’s plant. While so employed, a metal pin, 10 to 12 inches long and weighing between one and three pounds, fell a distance of six or seven feet striking decedent either on the back of the neck or the lower portion of the back of his head and causing a wound from which a little blood oozed. Decedent continued working and did not report to the plant hospital.
 

 Decedent continued working until March 30 when he did not report for work and was taken to the hos
 
 *352
 
 pital, where he died on April 1 from a cerebral hemorrhage.
 

 There was a conflict in the evidence as to whether on March 11 decedent had been struck on the back of the neck or whether the blow was to a portion of the back of his head. There was also a conflict in the evidence as to whether the blow was the “probable cause” of the cerebral hemorrhage.
 

 Certainly the evidence in the record would not have required a finding, as a matter of law, of the necessary proximate causal relationship between decedent’s employment, or the apparently slight injury to him on March 11, and the cerebral hemorrhage on or about March 30.
 
 McNees
 
 v.
 
 Cincinnati Street Ry. Co.,
 
 152 Ohio St., 269, 89 N. E. (2d), 138. It does not follow that that question of proximate causation should not have been submitted to the jury. There was substantial evidence in the record tending to prove that the blow received by decedent on March 11 was to the lower portion of the back of his head and that such blow was the “probable cause” of the cerebral hemorrhage. That being so, this question of proximate causation was one for the jury. See
 
 McNees
 
 v.
 
 Cincinnati Street Ry. Co., supra; Drakulich
 
 v.
 
 Industrial Commission,
 
 137 Ohio St., 82, 27 N. E. (2d), 932.
 

 The next question raised is whether the trial court erred in admitting in evidence three pages from a medical book.
 

 One of the principal questions for the jury’s consideration was whether the cerebral hemorrhage was caused by the blow received by decedent on March 11. There was substantial evidence tending to prove that a cerebral hemorrhage could not be the result of such a blow received 20 days before.
 

 The testimony of defendant’s witness, Dr. Kramer, was to the effect that it could not. On cross-examination, Dr. Kramer was asked if he had ever heard of a
 
 *353
 
 particular book, “Injuries of the Skull, Brain and Spinal Cord, ’ ’ edited by Samuel Brock, lie answered in the negative. He was then asked if he was familiar with the medical publishing house which had published that work and admitted that it was “a recognized medical publishing house. ’ ’ On further inquiry, the witness stated that he had heard of Dr. Friedman, who was referred to in the book, and that the doctor was a recognized man in his field.
 

 Plaintiff’s counsel then read to the witness a portion of Brock’s book, stating conclusions of Dr. Friedman, and asked the witness whether he agreed with those conclusions. The witness indicated that he did not agree with a part of the conclusions of Dr. Friedman read to him from the Brock book. Plaintiff’s counsel questioned the witness further with regard to the conclusions of Dr. Friedman, stated in the Brock book, and the witness in his answers indicated that those conclusions may have related to cases involving conditions different from those involved in the decedent’s case.
 

 Plaintiff’s counsel further read to the witness portions from this book by Brock as to conclusions of two other doctors, and questioned the witness about them. The witness gave somewhat similar answers, as to how and why he differed with those conclusions of those two other doctors.
 

 The portions of the book so read to Dr. Kramer indicated that a cerebral hemorrhage could result from a blow received a substantial time before such hemorrhage occurred.
 

 No objection was made by defendant to this cross-examination of Dr. Kramer, so that the question, as to whether such cross-examination was or was not proper, is not directly before the court in this case.
 

 At the conclusion of the cross-examination of Dr. Kramer, plaintiff’s counsel offered Dr. Brock’s book
 
 *354
 
 in evidence. Defendant objected “on the ground that it is immaterial, irrelevant and incompetent” and pointed out that all portions, as to which any questions had been raised, had been quoted and included in the testimony of Dr. Kramer.
 

 The court admitted the book into evidence but instructed the jury as follows:
 

 “In connection with the testimony that you have heard there will be some documentary evidence coming before you and among such evidence is a book, a treatise on one branch of medicine. Quite a bit of it is in very difficult and technical English — I would need another book to read it with, a medical dictionary, if I were to undertake it, but perhaps you are better qualified than I am. At any rate, your attention as far as that book is concerned, if you want to refer to it as you have a right to, will be confined to three pages only, pages 119, 120 and 121, and do not look at the rest of it, even if it has pictures!”
 

 The great weight of authority holds that medical books or treatises, even though properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate, are not admissible in evidence to prove the truth of the statements therein contained. 20 American Jurisprudence, 816, Section 968; 65 A. L. R., 1102, annotation.
 

 Even where such a book or treatise merely recites facts observed by the writer and the opinions of the writer, admission in evidence of such a book or treatise or any part thereof would, in effect, admit into evidence the testimony of the author of the book without affording to opposing ■ counsel any opportunity to cross-examine him.' Furthermore, the court would, in effect, be allowing the author to testify without having required him to take the- usual oath required of a witness.
 

 
 *355
 
 If the book or treatise, or the portion thereof admitted in evidence, contained unsound conclusions or inaccurate statements as to facts observed, how could a party show that? Even if he could, efforts to do so would result in side issues as to the merits or demerits of the author of the book, as to the soundness of his conclusions and as to the accuracy of his observations.
 

 If this kind of evidence were admitted, a party could find a book which supported his case and, by introducing it or a part of it in evidence, have a witness in the jury room'on his side of the case, even though such witness had not been under oath and had not been subject to cross-examination.
 

 Apparently recognizing the rule of law, that such books or treatises or parts thereof are not admissible to prove the truth of statements therein contained, plaintiff argues that pages 119, 120 and 121 of Brock’s book were not offered or admitted in evidence to prove the truth of statements contained therein.
 

 If that was not the purpose of the offer or admission of the part of this book in evidence, we fail to see what possible purpose could have been served by its offer or admission in evidence. Dr. Kramer did not deny that the statements read to him did appear in the book. Even if he had denied that such statements were in the book, we have difficulty in understanding how the fact, that such statements were in the book, could be a fact relevant to any issue in the instant case. Since Dr. Kramer did not deny that the statements .read to him were in the book, then there certainly could be no reason for offering the book, apart from an effort to make certain that the contents of those statements would influence the jury. Those statements were read to Dr. Kramer. His failure to deny that they were in the book could only tend to destroy
 
 *356
 
 the effect of his testimony, to the extent that his testimony was inconsistent with the statements.
 

 It might have been proper, in cross-examination of Dr. Kramer, to question him as to the basis of his conclusions and even ask him whether those, conclusions were based in any way on statements found in medical books or treatises. However, it is difficult to understand how inquiries with respect to statements in a particular book would be proper if it had not first been brought out that Dr. Kramer based his conclusions in some way on statements in that book. If Dr. Kramer denied that he had known about this particular book, it is difficult to see how his further cross-examination with regard to the book would be proper at all.
 

 The brief outline hereinbefore given as to the cross-examination of Dr. Kramer, with regard to Brock’s book, emphasizes the error of the trial court in admitting that book, or any part of it, in evidence. The portions of the book read to Dr. Kramer during his cross-examination did not even relate to conclusions or observations of the editor. Instead, they related to conclusions and observations of Dr. Friedman and of other doctors which Dr. Friedman had apparently heard of and was merely repeating. It appears further that the conclusions of Dr. Friedman and of those other doctors were based, in part, on what others had told to them. Even, therefore, if the editor of the book had taken an oath as a witness and been subject to cross-examination by opposing counsel, he would not have been permitted to testify as to the conclusions of these other doctors, based partly on their observations and the observations of parties who had told these other doctors about facts observed. In other words, if Brock had been a witness under oath and subject to cross-examination in this law suit, his testimony as to the statements, read to Dr. Kramer and contained
 
 *357
 
 on pages 119,120 and 121 of Ms book, would have been inadmissible as hearsay.
 

 Plaintiff, however, raises the question as to whether any error of the court in admitting Brock’s book, or portions of it, into evidence was prejudicial so as to justify reversal of the judgment of the Court of Appeals which affirmed the judgment of the trial court.
 

 Section 11364, General Code, reads in part:
 

 ‘ ‘ In every stage of an action, the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed, or affected, by reason of such error or defect. In the judgment of any reviewing court upon any appeal in any civil action, when it is sought to reverse any final judgment or decree or obtain a new trial upon the issues joined in the pleadings, such reviewing court shall certify on its journal whether or not in its opinion substantial justice has been done the party complaining, as shown by the record of the proceedings and judgment under review.
 
 In case
 
 such reviewing court shall determine and certify that in its opirnon
 
 substantial justice has been done
 
 to the party complaining as shown by the record,
 
 all
 
 alleged
 
 errors occurring at the trial shall
 
 by such reviewing court
 
 be deemed not prejudicial
 
 to the party complaimng and shall be disregarded and such judgment or decree under review shall be affirmed, or it shall be modified if in the opinion of such reviewing court a modification thereof will do more complete justice to the party complaining.” (Emphasis added.)
 

 Perhaps the most obvious application of the rule, stated in the foregoing section, would be an instance where the evidence was such that one party was entitled, as a matter of law, to the judgment which was rendered. In such an instance, any error, which the
 
 *358
 
 other party might ordinarily he in a position to complain about, would clearly not justify a reversal.
 

 The so-called two-issue rule represents another obvious application of the rule, stated in the foregoing section.
 
 Sites
 
 v.
 
 Haverstick,
 
 23 Ohio St., 626. So does the affirmance of a judgment which was properly rendered, even though the reasons given for it were erroneous.
 
 Baird
 
 v.
 
 Clark,
 
 12 Ohio St., 87, 90.
 

 However, in most instances, in order to find that substantial justice has been done to the appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must-not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would have made the same decision. In effect, to apply the rule stated in the foregoing section of the Code, the reviewing court is required to substitute its judgment, as to the result that would have been reached if no error had existed, for a verdict of the jury or a decision of the trier of the facts, which never was rendered. Thus, where a trial court directed a verdict for the defendant although there was sufficient evidence to justify submission of the case to the jury, an- affirmance of the trial court’s judgment by the reviewing court, on the ground that substantia] justice had been done, amounts to substitution by the reviewing court of its decision on the evidence for a verdict of the jury which was never rendered. See
 
 Taylor
 
 v.
 
 Schlichter,
 
 118 Ohio St., 131, 160 N. E., 610. The same situation exists if the verdict of a jury for one party is affirmed although potentially prejudicial evidence offered by such party had been improperly admitted by the trial court. If the reviewing court affirms a judgment entered on such a verdict, on the ground that substantial justice has been done, the reviewing court is necessarily substituting its decision on the evidence
 
 *359
 
 which was properly admitted for a decision which the jury never rendered on that evidence alone. See
 
 James Wilson & Co.
 
 v.
 
 Barkalow,
 
 11 Ohio St., 470.
 

 In effect, in the instant case, it would be necessary for this court to weigh the evidence, which it is not re-, quired to do (Section 12223-31, General Code) and which it ordinarily does not do, in order to determine that substantial justice was done so that the judgment should not be reversed because of the error in admission of potentially prejudicial evidence at the trial. The jury never rendered any verdict on the evidence which was properly admissible in this case. It is necessary, therefore, for this court, in order to determine that substantial justice was done, to decide that, if the jury had had an opportunity to render a verdict on such evidence, it would have rendered the same verdict which it did render on such evidence plus the improper evidence. Obviously, this involves a weighing of evidence by this court unless the evidence is such as to require judgment for the appellee as a matter of law.
 

 In determining whether improperly admitted and potentially prejudicial evidence did prejudice the appellant or whether substantial justice has been done the appellant as contemplated by Section 11364, General Code, a reviewing court should never usurp the province of the jury by weighing the other evidence or determining the credibility and effect of conflicting evidence, unless the weight, credibility and effect of that evidence is very substantially in favor of the appellee.
 

 In the instant case, the trial court set aside the first verdict for the plaintiff on the ground that it was not supported by sufficient evidence. We do not believe that the trial court abused its discretion in doing that. The evidence on the second trial was the same as on the first trial. Obviously, therefore, the weight of the
 
 *360
 
 evidence was' not even in favor of the plaintiff. Furthermore, the portions of the Brock book erroneously admitted in evidence were clearly evidence which could have prejudiced defendant. Therefore, this court certainly cannot determine that the error in admitting those portions of the Brock book was not prejudicial to the defendant or that substantial justice has been done to the defendant.
 

 In support of the judgment of the Court of Appeals, plaintiff contends that defendant’s motion for a new trial was not filed within the time prescribed by law.
 

 It appears from the record that the second verdict of the jury for plaintiff was rendered on September 24, 1948. Thereafter, on October 1, 1948, defendant filed a motion for judgment notwithstanding the verdict. On October 4, 1948, that motion was overruled, judgment was rendered for plaintiff on the verdict, and a motion for a new trial was filed by defendant.
 

 Plaintiff’s contention is that her claim was filed with the Industrial Commission of Ohio on April 13, 1943, and that, by reason of the provisions of Section 26; General Code, Section 11578, General Code, as in force on April 13, 1943, would apply in the instant casé.
 

 Under Section 11578, General Code, as in force prior to October 11, 1945, it was necessary to file a motion for a new trial “within three days after the verdict.” Under that section, as in force on and after that date, such a motion for a new trial could be filed within ten days after the judgment. It is obvious, therefore, that, if Section 11578, General Code, as in force after October 11, 1945, is to apply in the instant case, defendant’s motion was filed in time; but, if that section, as in force prior to that date, is to apply, defendant’s motion was filed too late.
 

 Section 26, General Code, reads in part:
 

 “Whenever a statute is repealed or amended, such
 
 *361
 
 repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed * *
 

 In
 
 Von Gunten
 
 v.
 
 New Justice Coal Co.,
 
 147 Ohio St., 511, 72 N. E. (2d), 253, this court held that Section 11578, General Code, so far as it prescribed the time in which an application for a new trial must be filed, “relates to the remedy” within the meaning of the foregoing language in Section 26, General Code.
 

 The petition in the Common Pleas Court in the instant case was not filed until April 16,1946. This question thus reduces itself to whether the appeal to the Common Pleas Court, provided for by Section 1465-90, General Code, and instituted by the filing of that petition, constituted an action or proceeding within the meaning of Section 26, General Code, or whether such appeal was merely a part of the proceedings commenced by the filing of plaintiff’s claim with the Industrial Commission on April 13,1943.
 

 Section 1465-90, General Code, reads in part:
 

 “If the commission, after such hearing, denies the right of the claimant to receive or to continue to receive compensation it shall state the ground or grounds on which the claim was denied and if the claim was denied on any of the grounds hereinabove specifically stated then the claimant, within sixty days after receipt of notice of such action of the commission, may
 
 file a petition in the Common Pleas Court
 
 of the county wherein the injury was inflicted, or in the Common Pleas Court of the county wherein the contract of employment was made in cases where the injury occurs outside the state of Ohio. If the claimant is seeking compensation from the state insurance fund, the
 
 defendant in such action
 
 shall be the Industrial Commission and
 
 summons shall be issued
 
 to the Indus
 
 *362
 
 trial Commission and also to the Attorney General. If the claimant is seeking compensation from an employer who has qualified to pay compensation direct, as provided by Section 1465-69 of the General Code, or from an employer who has failed to comply with this act, the
 
 defendant in such action
 
 shall be such employer and
 
 summons shall issue to such employer. Further pleadings
 
 shall be had
 
 in accordance with the rules of civil procedure. * '*
 
 * and if, for any reason
 
 at any stage of such proceeding '* * *.
 

 “The cost of any
 
 legal proceedings, authorized by this section.
 
 * * * Either party
 
 in any of such proceedings
 
 shall have the
 
 right to prosecute error as in the
 
 ordinary
 
 civil cases
 
 provided that
 
 in any such proceedings
 
 the transcript of the record of rehearing before the Industrial Commission need not be rewritten in the bill of exceptions * * Such right of rehearing before the commission and of appeal from the decision of the commission on such rehearing where such decision denies compensation to a claimant on the grounds hereinbefore specified * * V’ (Emphasis added.)
 

 In our opinion, an appeal by a claimant to the Common Pleas Court, pursuant to the foregoing provisions of Section 1465-90, General Code, represents an action or proceeding within the meaning of Section 26, General Code, which action or proceeding is separate from the proceeding resulting from the filing of the original claim with the Industrial Commission. See
 
 State, ex rel. Cleveland Ry. Co.,
 
 v.
 
 Atkinson, Admr.,
 
 138 Ohio St., 157, 161, 162, 34 N. E. (2d), 233. We believe that this conclusion necessarily follows from the language of Section 1465-90, General Code.
 

 The judgment of the Court of Appeals is, therefore, reversed and the cause remanded to the Common Pleas Court for a new trial.
 

 Judgment reversed.
 

 Matthias, Hast and Stewart, JJ., concur.
 

 
 *363
 
 Weygandt, C. J., concurs in paragraphs one, two and five of the syllabus and in the judgment.