OPINION
{¶ 1} Defendant-appellant Michael Sumser appeals from the July 10, 2001, and October 11, 2002, Judgment Entries of the Stark County Court of Common Pleas issuing a Civil Protection Order.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 14, 2001, appellee Sherada Mann filed a Petition for Stalking Civil Protection Order (SCPO) pursuant to R.C. 2903.214 against appellant in the Stark County Court of Common Pleas. A temporary Stalking Ex Parte Civil Protection Order was issued on the same day following a hearing. Thereafter, a full Civil Protection Order hearing was held on June 28, 2001, before a Magistrate. The following evidence was adduced at the hearing.
 {¶ 3} Appellee Sherada Mann and appellant Michael Sumser were acquaintances for approximately one and a half years commencing in 2000. Appellee met appellant through her son, who was friends with appellant's son.
 {¶ 4} At the time that the two met, appellee was experiencing financial problems and was facing foreclosure on her home. Appellant, at the request of appellee's son, gave appellee a $5,000.00 gift to prevent the foreclosure. Thereafter, during the course of their acquaintance, appellant frequently gave unsolicited gifts to appellee, including jewelry, money, a gas grill and a television. One day when appellee came home, she found a 2000 Ford Taurus in her garage. On the car's windshield was a note from appellant reading as follows:
 {¶ 5} "My love. I hope this makes up for the rotten summer you've had and the grief I caused you. I don't know any other way to show you how much I love you and assure you of my commitment to you and you only for the rest of our lives. I truly love you with all my heart. My undying love forever, Mike." Transcript at 9.
 {¶ 6} When asked why, after repeatedly telling appellant that she did not want a relationship with him, she cashed the numerous checks that appellant gave to her, appellee testified that appellant "wouldn't take no for an answer." Transcript at 69. Appellee further testified that appellant repeatedly told her that she was going to marry him. The following testimony was adduced when appellee was asked what she did in response to appellant's marriage requests:
 {¶ 7} "I repeatedly told him that I would never marry again. At one point I said in frustration, What are you going to do if I don't marry you? What are you going to do when I don't marry you? What are you going to do when I don't marry you? And he keeps saying that it's not up to me. I will not marry you. What are you going to do? He said, I'll shoot all of you." Transcript at 27. Appellee testified that, by use of the phrase "all of you," appellant was referring to appellee and her two children. According to appellee, appellant possessed many guns.
 {¶ 8} Appellee further testified that, in January, 2001, during a telephone conversation with her, appellant "was hysterically screaming into my ear in the phone." Transcript at 18. According to appellee, appellant, during such conversation, said that appellee's house and everything in it was his and that she would be living in the streets. When asked what she thought appellant meant, appellee responded as follows:
 {¶ 9} "He just — I think that he believed that because he had done repairs to my home, that house was his now. It made me think that because he had pursued me all this time, given me the money and the gifts, I believed in his mind he thought that that entitled him to my home, me, my family, my children, my parents, my dog." Transcript at 19.
 {¶ 10} Appellant, during the conversation, also threatened to burn appellee's house down. In April of 2001, appellee's house was bombed with a pipe bomb.
 {¶ 11} At the hearing before the Magistrate, appellee also testified that, in March of 2001, appellant menaced her with his vehicle. During the first incident, appellant was tailing appellee while "swerving a little bit left to right." Transcript at 20. According to appellee, appellant had a "crazed look in his eyes" at the time. Transcript at 20. During the second incident, appellant pulled in front of appellee and cut her off so that her vehicle was forced off of the road and partially into a ditch. Appellant then exited his vehicle and began beating on appellee's window. Appellee testified that all of the incidents involving appellant caused her to suffer mental distress and made her feel "terrified". Transcript at 26.
 {¶ 12} As memorialized in a Magistrate's Order filed on June 28, 2001, the Magistrate issued a Civil Protection Order for appellee's benefit. The order, which was three years in duration, prohibited appellant from possessing, using, carrying or obtaining any firearm or other deadly weapon for three years. A Nunc Pro Tunc Civil Protection Order, adding appellee's two children, was filed on July 10, 2001. Appellant, on July 23, 2001, filed an objection to the Nunc Pro Tunc Civil Protection Order.
 {¶ 13} Pursuant to a Judgment Entry filed on October 11, 2001, the trial court vacated the July 10, 2001 Nunc Pro Tunc Civil Protection Order with regard to appellee's children, but confirmed the same with regard to appellee. The trial court, in its entry, indicated that it had considered the affidavit attached to appellee's Petition for Stalking Civil Protection Order and the evidence presented at the June 28, 2001, hearing.
 {¶ 14} It is from the July 10, 2001, Nunc Pro Tunc Civil Protection Order and the October 11, 2001, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 15} "I. THE TRIAL COURT ERRED IN CONSIDERING EVIDENCE OUTSIDE THAT OFFERED DURING THE HEARING IN THIS MATTER BY CONSIDERING APPELLEE'S AFFIDAVIT IN CONJUNCTION WITH APPELLANT'S OBJECTION.
 {¶ 16} "II. THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 17} Appellant, in his first assignment of error, argues that the trial court erred in considering the affidavit attached to appellee's Petition for Stalking Civil Protection Order. Appellant specifically contends that the trial court should not have considered the same since the affidavit was not offered at the June 28, 2001, hearing.
 {¶ 18} A court's error may be considered harmless only if it does not affect the substantial rights of the parties. Civ.R. 61. "Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." Hallworth v. Republic Steel Corp. (1950),153 Ohio St. 349, 91 N.E.2d 690, paragraph three of the syllabus.
 {¶ 19} We concur with appellee that, even if appellee's affidavit had not been considered by the trial court, the Civil Protection Order would still have been issued by the trial court. As is noted by appellee in its brief, appellee's affidavit was substantively identical to her testimony at the hearing before the Magistrate. Both during her testimony and in her affidavit, appellee stated that appellant told her that her house and everything in it was his and that appellee would be living in the streets. Furthermore, during her testimony and in her affidavit, appellee indicated that appellant threatened to burn her house down, threatened to shoot her, told her that whether she married him or not was not up to her, bought her a car, tailed her while she was driving, and, on one occasion, ran her vehicle off of the road.
 {¶ 20} Accordingly, since appellant was, therefore, not prejudiced by the consideration of the affidavit, appellant's first assignment of error is overruled.
 II {¶ 21} Appellant, in his second assignment of error, contends that the evidence presented at the June 28, 2001, hearing was insufficient to support the trial court's decision granting of the Civil Protection Order and was against the manifest weight of the evidence.
 {¶ 22} Pursuant to R.C. 2903.214(C), a person may seek relief against an alleged stalker by filing a petition which shall contain "[a]n allegation that the respondent engaged in a violation of section 2903.211
of the Revised Code [menacing by stalking] against the person to be protected by the protection order, including a description of the nature and extent of the violation." R.C. 2903.214(E)(1) continues: After an ex parte or full hearing, the court may issue any protection order, with or without bond, that contains terms designed to ensure the safety and protection of the person to be protected by the protection order, including, but not limited to, a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member. If the court includes a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member in the order, it also shall include in the order provisions of the type described in division (E)(5) of this section."
 {¶ 23} A preponderance-of-the-evidence standard applies to the granting of a stalking protection order. Lindsay v. Jackson (Sept. 8, 2000), Hamilton App. Nos. C-990786, A-9905306, applying Felton v. Felton
(1997), 79 Ohio St.3d 34, 679 N.E.2d 672 paragraph two of the syllabus. See also Huffer v. Chafin, Licking App. No. 01CA74, 2002-Ohio-356. InState v. Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277, the Ohio Supreme Court noted that the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and that an appellate court may not substitute its judgment for that of the fact finder. The fact finder is free to believe all, part, or some of the testimony of each witness. State v. Caldwell (1992), 79 Ohio App.3d 667,679, 607 N.E.2d 1096. Therefore, a judgment supported by competent and credible evidence going to all the elements of the case must not be reversed by a reviewing court as being against the manifest weight of the evidence. Masitto v. Masitto (1986), 22 Ohio St.3d 63, 488 N.E.2d 857.
 {¶ 24} While appellant contends that the trial court's decision issuing a Civil Protection Order was against the manifest weight of the evidence, we do not concur. Pursuant to R.C. 2903.214(C), the granting of a motion requesting a Civil Protection Order must be predicated upon an allegation of a violation of R.C. 2903.211. Such section states, in relevant part, as follows:
 {¶ 25} "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 26} "(D) As used in this section:
 {¶ 27} "(1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer's, emergency medical services person's, or emergency facility person's official capacity may constitute a "pattern of conduct."
 {¶ 28} "(2) "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."
 {¶ 29} Upon our review of the transcript, we find that there was competent and credible evidence presented at the hearing before the Magistrate that appellant engaged in two or more closely related incidents and, by doing so, knowingly caused appellee to believe that appellant would cause physical harm to her and to suffer mental distress. As is stated above, appellee testified that appellant threatened to shoot appellee and her family if she did not marry him, ran her off the road once with his vehicle and then, while her car was in a ditch, began beating on the car window, and threatened to burn her house down. Appellee further testified that, on one occasion, when she went to appellant's house to talk to him about her son, appellant "got right up in my face like he was going to hit me." Transcript at 33. At the hearing, appellee testified that, as a result of appellant's actions, she was "terrified" and felt that "there was no safe place for us even in hiding." Transcript at 26, 34.
 {¶ 30} Appellant, in his brief, also challenges the three year duration of the Civil Protection Order. Appellant specifically contends that "the Court below offered no basis, legal or otherwise, in support of continuing the duration of its Order for a period of three (3) years."
 {¶ 31} Pursuant to R.C. 2903.214(E) (2)(a) "[a]ny protection order issued pursuant to this section shall be valid until a date certain but not later than five years from the date of its issuance." Thus, the trial court could have ordered that the Civil Protection Order remain in effect for up to five years. We find, based upon the evidence set forth above, that the trial court's order that the Civil Protection Order remain in effect for three years did not constitute an abuse of discretion.[1]
The trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 32} Appellant, in his second assignment of error, further challenges the trial court's order prohibiting appellant from possessing, using, carrying or obtaining any firearm or deadly weapon for three years, the duration of the Civil Protection Order, and requiring appellant to turn over any firearms or other deadly weapons to the police. Appellant maintains that such order was not supported by the evidence, constituted a clear violation of R.C. 2903.214(E)(1), and is in violation of the Second Amendment of the United States Constitution.
 {¶ 33} We find that the trial court's order with respect to firearms/deadly weapons was supported by the evidence and is not in violation of R.C. 2903.214. As is stated above, such section provides, in pertinent part, as follows:
 {¶ 34} "(E)(1) After an ex parte or full hearing, the court may issue any protection order, with or without bond, that contains terms designed to ensure the safety and protection of the person to be protected by the protection order, including, but not limited to, a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member. If the court includes a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member in the order, it also shall include in the order provisions of the type described in division (E)(5) of this section." (Emphasis added). Thus, R.C. 2903.214(E) permits the court to issue any protection order containing terms designed to insure the safety and protection of the subject. Spence v. Herbert (July 30, 2001), Licking App. No. 00CA93. We find, based upon appellee's testimony that appellant threatened to shoot her and her family, that the trial court's order regarding firearms/deadly weapons was supported by the evidence.
 {¶ 35} While, as is stated above, appellant argues that the trial court's order restricting appellant from using, possessing, carrying or obtaining a gun or other deadly weapon is unconstitutional, we decline to address such argument. Appellant, in his objection to the Nunc Pro Tunc Civil Protection Order issued by the Magistrate, never raised the issue of the constitutionality of such restriction. Accordingly, pursuant to Civ.R. 53(E)(3)(b), appellant's failure to object to the Magistrate's Decision on constitutional grounds constituted a waiver of such issue. Moreover, nowhere in appellant's brief is the issue of constitutionality actually argued. App.R. 16 requires a brief to contain "* * * the contentions of the appellant with respect to the assignments of error presented, and the reasons in support of the contentions, with citations to the authorities, statutes and parts of the record on which appellant relies." While appellant, in his brief, makes a statement that the trial court's order restricting appellant from possessing, using, carrying or obtaining any firearm or other deadly weapon is unconstitutional, he has failed to cite any authority for such proposition.
 {¶ 36} Appellant's second assignment of error is, therefore, overruled.
 {¶ 37} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J., Gwin, P.J. and Wise, J. concur.
[1] See Stella v. Platz (June 17, 1999), Washington App. No. 98CA18, in which the court applied an abuse of discretion standard in reviewing the duration of a Civil Protection Order issued pursuant to R.C.3113.31(E)(3)(a). Such section mirrors R.C. 2903.214.