DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Bank One, N.A., appeals from the judgment of the Summit County Court of Common Pleas which found in favor of Appellee, Walter Bettinger. We reverse.
 {¶ 2} On February 22, 2000, Appellant filed a complaint against Appellee and Auto Leasing. The complaint alleged that Appellee breached a vehicle lease contract, which had been assigned to Appellant, and then converted the subject vehicle. Thereafter, Appellee filed an answer, counter-claim, and cross-claim against John Czoper ("Czoper"), owner of Auto Leasing. Default judgment was granted to Appellant on its claims against Auto Leasing and to Appellee on his claims against Czoper.
 {¶ 3} The matter proceeded to trial by magistrate. At the close of Appellant's case, the magistrate directed a verdict against Appellant on its claims against Appellee. Appellant's subsequent motions for directed verdict on Appellee's conversion and statutory claims were denied. The court entered judgment in favor of Appellee. Thereafter, Appellant filed its objections. On December 5, 2002, the court overruled Appellant's objections and affirmed the magistrate's decision. This appeal followed. Appellant has raised three assignments of error which have been rearranged for ease of review.
 ASSIGNMENT OF ERROR I
"The trial court erred in granting [Appellee's] motion for directed verdict on [Appellant's] claims[.]"
 {¶ 4} In its first assignment of error, Appellant asserts that the trial court committed error by granting Appellee's motion for directed verdict. Appellant's assignment of error has merit.
 {¶ 5} Appellant essentially contests an evidentiary ruling that was made at the trial court level. Appellant's claims were premised on the assignment of the lease agreement from Auto Leasing to Appellant. At trial, Appellant was unable to produce an executed original or duplicate agreement indicating that the lease had been assigned to and accepted by Appellant. Although Appellant was prepared to present other, secondary evidence of such a contract, the magistrate would not allow Appellant to present any of its proffered evidence to the jury. Thus, Appellee's motion for directed verdict was granted as Appellant was prevented from producing any evidence on an essential element of its claims.
 {¶ 6} The admission or exclusion of evidence is left to the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. "[A reviewing] court will not reject an exercise of this discretion unless it clearly has been abused and the [party] thereby has suffered material prejudice." State v. Long (1978),53 Ohio St.2d 91, 98. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. Material prejudice occurs when the reviewing court is unable to determine that without the errors the fact finder would most likely have reached the same decision. Zeber v. Herd (June 14, 2000), 9th Dist. No. 19602, at 6, citing Hallworth v. Republic Steel Corp. (1950),153 Ohio St. 349, paragraph three of the syllabus.
 {¶ 7} Generally, when proving the contents of a writing, the original document is required. Evid.R. 1002. However, Evid.R. 1004 provides several exceptions to the "best evidence rule." The original is not required, and other evidence of the contents of a writing are admissible if the original has satisfactorily been shown to be lost or destroyed, unless the proponent lost or destroyed the original in bad faith. Evid.R. 1004(1). Secondary evidence, as to the execution and existence of a written contract, is then competent evidence. See Jancharv. Cerkvenik (1930), 35 Ohio App. 519, 523. For "[t]he general rule does not exclude all but the primary evidence of a fact; it requires only that the best evidence available be produced, whether it be primary or secondary." Centerville v. Locker (Dec. 2, 1981), 2nd Dist. No. 6835, quoting 21 Ohio Jurisprudence 2d, Section 256.
 {¶ 8} In the instant case, Appellant sought to introduce secondary evidence of a written assignment of the lease contract. Appellant explained that although the executed copy of the lessor operating agreement containing the assignment provision could not be located, such a document did exist. However, before Appellant had the opportunity to present its evidence or establish its authenticity, the magistrate decided that Appellant was unable to go forward with its claims as "[t]he proof of the document * * * is the document itself." The magistrate indicated that when there was no original or duplicate to establish that the document ever existed, the requirements of the best evidence rule had not been met. The magistrate then ruled that the court did not have any evidence it could use to establish Appellant's claims and stated that the jury would receive an instruction that there was no assignment. Appellant's counsel objected and stated that Evid.R. 1004 permitted him to introduce evidence such as testimony and other potentially relevant documents. Appellant's counsel then proffered the secondary evidence of the existence of the contract outside the presence of the jury. He maintained that the testimony of a bank officer, who in the past had in his possession the executed document, would be presented along with evidence that Appellant acted in reliance on the assignment relationship. Appellant allegedly disbursed approximately $101,000 to Czoper as part of the agreement and then noted on the title of the vehicle that it possessed a security interest in the vehicle in order to secure the funds advanced pursuant to the assignment. Additionally, Appellant undertook efforts to recover the vehicle from Appellee.
 {¶ 9} Upon review of the record, we find that the magistrate erred in not allowing Appellant to produce secondary evidence of the written assignment pursuant to Evid.R. 1004. The failure to produce the original was satisfactorily explained; the document was accidentally lost and there is no evidence of bad faith. Thus, Appellant should have been given the opportunity to present secondary evidence, in compliance with other evidentiary rules on hearsay, authentication, etc., in order to prove the written contract and the substance of its terms. See Janchar,35 Ohio App.3d at 523, and Evid.R. 1004. The magistrate's ruling was unreasonable and thus an abuse of discretion. Moreover, this court cannot conclude that the jury would probably still have found in favor of Appellee if the proffered evidence had been admitted. Accordingly, Appellant's first assignment of error is sustained.
 ASSIGNMENT OF ERROR III
"The trial court erred in denying [Appellant's] motion for directed verdict on [Appellee's] statutory claim[.]"
 {¶ 10} In its third assignment of error, Appellant maintains that the trial court erred by failing to grant its motion for directed verdict on Appellee's statutory claim. We agree.
 {¶ 11} Pursuant to Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" When the party opposing the motion has failed to produce evidence on an essential element or elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner (1990), 66 Ohio App.3d 693,695. However, if substantial evidence upon which reasonable minds may reach differing conclusions is presented, the motion must be denied.Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275.
 {¶ 12} A trial court's ruling on a motion for a directed verdict is reviewed de novo on appeal as it presents questions of law. Schaferv. RMS Realty (2000), 138 Ohio App.3d 244, 257. A request for a directed verdict tests the sufficiency of the evidence presented at trial. HolidayProperties, Inc. v. Lowrie, 9th Dist. Nos. 21055 and 21133,2003-Ohio-1136, at ¶ 48, citing Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119-20.
 {¶ 13} In the present case, the trial court denied Appellant's motion for a directed verdict made at the close of Appellee's case. The jury subsequently found in favor of Appellee on his claim pursuant to R.C. 1304.28(A)(1).
 {¶ 14} R.C. 1304.28(A)(1) provides for the accountability of the payor bank for the late return of an item:
"[i]f an item is presented to and received by a payor bank, the bank is accountable for * * * [t]he amount of a demand item * * * whether properly payable or not if the bank, * * * regardless of whether or not it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline."[1]
 {¶ 15} "Presentment" means "a demand made by or on behalf of a person entitled to enforce the [draft] * * * to accept a draft made to the drawee." R.C. 1303.61(A). "Acceptance" is the "drawee's signed agreement to pay the draft as presented." R.C. 1303.46(A). The acceptance must be noted on the draft and may consist of a signature. Id. For the following reasons, we conclude that R.C. 1304.28(A)(1) is not applicable to the instant case.
 {¶ 16} At trial, Appellee offered his version of the events. Appellee testified that upon receiving the $65,000 check from Czoper he went straight to the bank to deposit the check into his account. Appellee stated that he picked up a deposit slip and then proceeded to the teller window. Appellee further stated that he produced his driver's license for identification purposes, endorsed the back of the check, and then gave both the check and the deposit slip to the teller and asked for a deposit into his checking account. Appellee asserted that the teller looked up his account number in the computer and then filled out the deposit slip. He maintained that he did not want the check cashed. Appellee explained that as the teller began entering the information into the computer, a look of "concern" crossed her face. The teller then asked Appellee to wait one moment while she contacted her supervisor. Appellee testified that a supervisor then approached and informed him that he was unable to deposit the check. He inquired as to the reason, but no further explanation was given. Appellee was again told that he could not deposit the check.
 {¶ 17} Appellee asserted that he then requested to speak with the branch manager regarding the matter. The supervisor handed the check and deposit slip back to Appellee and went to locate the manager, Connie Krumrine ("Krumrine"). Appellee recalled that the "branch manager was quite professional and indicated to [him] that [he] could not deposit the check." She explained that she was unable to reveal more information due to privacy matters. Appellee testified that he then informed Krumrine he would simply deposit the check into the ATM machine. However, she allegedly indicated that he was unable to do that as well. Appellee further testified that this conversation went back and forth for a few moments until Krumrine indicated that she would "take the check." Appellee maintained that he then handed the check and deposit slip to Krumrine and asked for a carbon copy of the deposit slip. Although Krumrine did not give him a carbon copy, Appellee indicated that she allegedly photocopied the check and deposit slip for Appellee after remarking that she "could get in big trouble for [complying]." Appellee asserted that Krumrine stated "[he] should feel fortunate that [she] accepted this check. Don't ask for a receipt." Appellee indicated that he then wrote down Krumrine's name and telephone number and left the bank. He explained that he did not receive a credit to his account nor a copy of the check or the original with a notation that it would not be accepted for payment. Appellee stated that he spoke with Czoper shortly thereafter and learned that $74,000 in funds had been "swept" from Czoper's account to set-off his existing debt to Appellant.
 {¶ 18} Krumine offered her testimony at trial. She recalled being contacted by the assistant branch manager on May 1, 1998, because Appellee had presented the bank with a $65,000 check and was demanding when informed that the bank would not accept it. Krumrine indicated that in these instances she would either call the account officer who was authorized to overrule her decision to not accept the check or hold the check and give it "lead time to clear" if the customer was an individual with whom she was familiar. Krumrine recalled Appellee requesting immediate credit for the $65,000 check. She explained that she could not honor his request. Krumrine stated that she did not recall Appellee leaving the check in her possession nor did she remember photocopying the documents. She maintained that it would be highly unlikely for her to hold onto the check because it was for such a large amount and she was not familiar with Appellee.
 {¶ 19} The testimony reveals that various representatives of Appellant made it explicitly clear to Appellee that the check was not going to be accepted by the depository bank. Krumrine, a representative of the depository bank, may have agreed to retain the check. However, no matter what other duties may have been established between a bank and its depositor, the evidence does not show that the depository bank ever deposited and then presented the check to the payor bank. The duty to notify under R.C. 1304.28(A)(1) is a duty on the payor bank and not the depository bank. The fact that the depository bank and the payor bank are one and the same does not change the timing of the duties under R.C.1304.28(A)(1).
 {¶ 20} The issue in this case is whether or not the payor bank ever received the check for payment. If it did, it had an obligation under R.C. 1304.28(A)(1) to notify the depository bank, which in turn would notify its customer, of the dishonor of payment. Since there was no evidence of the check ever being deposited for payment, there is a lack of evidence that it would have been presented to the payor bank for payment. Therefore, R.C. 1304.28(A)(1) is inapplicable in this case. Notwithstanding that the facts of this case would indicate that the depository bank would have presented the check to itself, the obligation does not arise until that presentment is made. In this case, the presentment as contemplated under R.C. 1303.61(A) has not been established.
 {¶ 21} Although Appellee alleges that the check was delivered to the drawee bank, through Krumrine, the evidence does not show that the handing over of the check constituted a "presentment," within the meaning of R.C. 1303.61 at the time it was actually delivered and received by Appellant. Under such circumstances, Appellant was not obligated to abide by the time requirements established in R.C. 1304.28(A)(1). See McDowellNatl. Bank v. Farmers Natl. Bank (May 27, 1987), 7th Dist. No. 85 C.A. 124 (finding that the drawee bank was not obligated to pay or return checks, within time period specified by statute, when delivery of the checks in question to the drawee bank did not constitute presentment, but rather were delivered pursuant to an oral agreement to hold them until sufficient funds were on deposit). This court concludes that there was insufficient evidence presented below to reach the conclusion that Appellant was accountable for the check under R.C. 1303.28(A). Accordingly, Appellant's third assignment of error is sustained.
 ASSIGNMENT OF ERROR II
"The trial court erred in denying [Appellant's] motion for directed verdict on [Appellee's] conversion claim[.]"
 {¶ 22} In light of our disposition of the first assignment of error, assignment of error two will not be further addressed as this assignment of error has now been rendered moot. See App.R. 12(A)(1)(c).
 {¶ 23} Appellant's first and third assignments of error are sustained. Assignment of error two has not been addressed. The judgment of the Summit County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed and remanded.
WHITMORE, J., BATCHELDER, J. CONCUR
[1] Appellant is both the depository and payor/drawee bank in this instance as Appellee and Czoper each maintain accounts at Bank One, N.A.