LICATA JEWELERS, INC., Appellee,

v.

LEVIS COMMONS, L.L.C., et al., Appellants.

[Cite as *Licata Jewelers, Inc. v. Levis Commons, L.L.C.,*
195 Ohio App.3d 411, 2011-Ohio-4684.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–10–038.

Decided Sept. 16, 2011.

412

Joseph J. Solomon, for appellee.

John D. Jolley, Michael J. King, and Gregory P. Mathews, for appellants.

YARBROUGH, Judge.

{¶ 1} This is an appeal from a judgment issued by the Wood County Court of Common Pleas following a jury verdict finding appellants Levis Commons, L.L.C. ("Levis") and Hill Partners, Inc. ("Hill Partners") liable for acting with malice or egregious fraud and engaging in fraudulent misrepresentation upon which appellee justifiably relied in entering into a commercial-lease agreement. For the following reasons, we reverse the judgment of the trial court and remand this appeal to the trial court for further proceedings consistent with this decision.

{¶ 2} Appellee, Licata Jewelers, Inc. is an Ohio corporation owned by Joseph Licata. Levis is an Ohio limited-liability company that owns an outdoor shopping center, the Town Center at Levis Commons ("the Town Center"). Levis is owned by several different business entities, two of which are Hill Partners, owned by Robert Spratt and Joe Tanneberger, and Levis Park Development, owned in part by Larry Dillin. Hill Partners also serves as property manager and leasing agent for the Town Center.

{¶ 3} According to the record, the Town Center is one of at least two subdivisions within a larger complex known as J. Preston Levis Commons. The Town Center is located in the northeast quadrant of J. Preston Levis Commons, and at the time was composed of the existing structure, "phase one," and a proposed future buildout that never came to fruition, "phase two." The existing and proposed future development was to be occupied by fashion-oriented national tenants, office space, and local and regional tenants.

{¶ 4} Adjacent to the Town Center is the second subdivision, Preston Place. Preston Place is located in the southeast quadrant of J. Preston Levis Commons. Like the Town Center, Preston Place was also owned in part by a business entity of Dillin. Testimony reflects that Preston Place would be seeking neighborhood

retail tenants, meaning small restaurants, sandwich shops, hair stylists, etc. Thus, Spratt, the managing shareholder and president of Hill Partners, and Greg Dobur, a leasing agent for Hill Partners, testified that they did not expect competition for tenants between the Town Center and Preston Place. However, Spratt and Dobur testified that competition did arise between the two subdivisions around the time that Licata began negotiations with Levis.

{¶ 5} Licata's retail jewelry store occupied a space on Byrne Road, in Toledo, for 25 years. In response to changing conditions in the area, Licata pursued a new location for his store. Dobur approached Licata in the spring of 2006 to discuss a potential move to J. Preston Levis Commons. At their initial meeting, Dobur presented to Licata a master-plan diagram labeled "The Town Center at Levis Commons." The master plan diagram depicted an aerial layout of the entire J. Preston Levis Commons development. The diagram depicted the subdivisions in different colors; however, the subdivisions were not labeled. Licata contends that Dobur did not differentiate between the Town Center and J. Preston Levis Commons. Dobur discussed "phase one" and "phase two" only as parts of the entire J. Preston Levis Commons development. Additionally, the plan did not include the names of any current or future tenants to the shopping center. After reviewing the plan, Licata expressed concerns about the growth potential for the shopping center and continued to look at other locations.

{¶ 6} Several meetings after their initial discussion, Dobur presented to Licata a second diagram that depicted only "phase two" of the shopping center, which Dobur said was set to break ground in the spring of 2007. Unlike the master-plan diagram, this diagram showed the names and locations of 15 additional business entities. Licata inquired as to whether the tenants depicted on the diagram were actually moving into the center and was assured by Dobur that the names could not be put on the document unless they were. Furthermore, Licata contends that Dobur explained to him that Macy's department store, in particular, was not on the diagram because they had not committed. Still skeptical, Licata also questioned Spratt as to the legitimacy of "phase two" and was told that it was in fact legitimate. Lastly, Licata contacted two of the national chain stores, Old Navy and Trader Joe's, both depicted as "phase two" tenants. Licata was told by Old Navy that they were "looking very seriously" at the space, but he received no response from Trader Joe's. However, Licata testified that for him, the assurances from Dobur and Spratt were sufficient verification that the tenants depicted in "phase two" were committed to moving into the area when it was completed. Licata believed the presence of well-recognized chain stores would increase foot traffic to his location and that "phase two" represented the future growth he was originally concerned about.

{¶ 7} Subsequently, Licata began lease negotiations with Dobur and Spratt. Licata did not approve of the initial draft of the lease because it did not address his concern that he be the only independent jeweler in the development. In response, an "exclusive-use" provision was placed in the final lease. Section 3 of the General Rider reads:

{¶ 8} "Landlord agrees that during the Term of this Lease (as may be extended) Landlord shall not enter into a Lease with, or permit any space in the Shopping Center to be leased to, an establishment whose primary business is the sale of jewelry-related merchandise. * * * [T]his provision shall not apply to: (i) those tenants occupying or in contract to occupy space within the Shopping Center prior to the execution of this Lease; (ii) tenants within the retail areas of Phase Two, The Annex, or Preston Place in the J. Preston Levis Commons development * * * [T]he following tenants are specifically excluded from this provision: Kay Jewelers, Brighton Collectibles, Chico's, Coldwater Creek, Francesca's Collections, Liz Claiborne, and Claire's Accessories."

{¶ 9} However, upon receipt of the final lease, Licata questioned the language in the exclusive-use provision and again reiterated that he wanted to be the only independent jeweler in the shopping center. In particular, he questioned the exclusion of Preston Place. What Dobur actually told Licata about Preston Place is disputed. However, Licata contends that he was told by Dobur that Preston Place was a "neighborhood or brownstone type of development and that the only retail tenants that would enter that type of development were restaurants, barber shops, or other types of retail tenants you would find to facilitate a neighborhood lifestyle." Licata further contends that Dobur informed him that it was being developed by Dillin and that Hill Partners was acting as leasing agent for the retail side. What is not disputed is that Hill Partners also explained that major-chain access required that Kay Jewelers be an exception to the provision and that a small portion in the southwestern quadrant of the complex was out of its control. Licata testified that these explanations were sufficient, and the final lease was signed with Levis in the fall of 2006.

{¶ 10} In addition to the exclusive-use provision, the final lease contained two other provisions that are at issue. First, the lease contained an integration clause that restricted the agreement to the terms therein. Specifically, the "No Modification" clause, contained in section 21.14, excluded from the lease any prior representations regarding present or future tenants of the shopping center. Secondly, Schedule E of the lease contained a hold-harmless agreement. The hold-harmless agreement was intended to free Hill Partners from any liability except as a result of negligence, misconduct, or bad faith on the part of Hill Partners.

{¶ 11} In February 2007, Licata Jewelers opened for business at its new location in "phase one" of the Town Center. Licata testified that within weeks of opening his store, he became aware, for the first time, that the Town Center was but one subdivision within the J. Preston Levis Commons development and that the subdivisions were owned by separate business entities. Soon thereafter, Licata was informed at a tenants' meeting that C. Sterling Jewelers, an independently owned jeweler, would be moving into the Preston Place subdivision of J. Preston Levis Commons. Licata protested the addition of C. Sterling Jewelers, citing the exclusive-use provision contained in his lease agreement as well as prior representations that he would be the exclusive independent jeweler in the J. Preston Levis Commons development. However, it was pointed out to Licata that Preston Place was excluded from the exclusive-use provision in his contract. Also, he was informed that his landlord, Levis, had no control over who leased space in Preston Place because it was owned by a different business entity.

{¶ 12} On September 14, 2009, Licata filed a complaint in the Wood County Court of Common Pleas alleging that Levis and Hill Partners had practiced fraudulent-inducement when they represented to it (1) that several attractive anchor stores were committed to become tenants and (2) that he would be the exclusive independent jeweler in the development. As a result, Licata claimed it suffered in the form of remodeling costs, lost profits, unexpected rent costs, and other damages, entitling it to monetary and punitive damages. Levis and Hill Partners answered Licata's complaint and filed a counterclaim for breach of the lease based on Licata's failure to pay rent and other charges due under the lease. Levis and Hill Partners then moved for summary judgment as to all claims and counterclaims on March 15, 2010, and the motion was subsequently denied.

{¶ 13} A two-day jury trial took place on June 7 and 8, 2010. The jury found in favor of Licata on its fraudulent-inducement claim and awarded monetary damages of $200,000 and found in favor of Levis and Hill Partners on the counterclaim, awarding $235,799.36. The jury also found Licata entitled to an award of punitive damages; however, no award amount was given because the jury form did not contain a space to include an award. After delivery of the jury's findings, the court asked the parties whether they had anything to add, to which both parties declined. At approximately 8:05 p.m., the jurors were discharged and were told that they were no longer required to remain silent regarding the case. Shortly thereafter, the omission of the punitive-damages amount was discovered by Licata's attorney. In response, the court recalled the jurors who had just left the courtroom and held the remaining jurors in the deliberation room. The court reconvened the jury at approximately 8:10 p.m. The court then sent the jury back into deliberations at 8:15 p.m. without administering an oath or inquiring as

to possible outside contact by any of the jurors. At 8:30 p.m., the jury awarded an amount of $100,000 in punitive damages to Licata.

{¶ 14} Levis and Hill Partners appealed to this court on June 24, 2010, asserting the following assignments of error:

{¶ 15} I. "The trial court erred in failing to apply the parol-evidence rule as a bar to Plaintiff–Appellee's claim for fraudulent-inducement, and in admitting extrinsic evidence of alleged prior or contemporaneous oral promises that are contrary to provisions in the parties' integrated Lease."

{¶ 16} II. "The jury's verdict against Defendants–Appellants is against the manifest weight of the evidence because Plaintiff–Appellee did not justifiably rely on the alleged prior or contemporaneous oral promises."

{¶ 17} III. "The trial court erred in failing to enter judgment in favor of Defendant Hill Partners, Inc. on the Hold Harmless Agreement, which was incorporated with and integrated into the Lease."

{¶ 18} IV. "The trial court erred in reassembling the jury after it was discharged, instructing the jury to alter or amend its verdict with additional punitive damages, allowing the jury to deliberate further, and allowing the jury to deliberate without being sworn."

{¶ 19} In their first assignment of error, Levis and Hill Partners argue that the trial court erred in finding that they fraudulently induced Licata into signing a lease for commercial space at the Town Center. They contend that the alleged representations as set forth by Licata directly contradict the express terms of the parties' lease agreement. Consequently, they argue that the representations violate the parol-evidence rule and should not have been considered on summary judgment or admitted at trial. Licata, on the other hand, argues that the representations fall outside of the parol-evidence rule because they are not being used to contradict the terms of the agreement, but rather to establish the claim of fraudulent-inducement.

{¶ 20} "The parol-evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed.1999) 569–570, Section 33:4.

{¶ 21} Nevertheless, fraud cannot be merged; thus, "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Galmish,* 90 Ohio St.3d at 28, 734 N.E.2d 782. However, the parol-evidence rule cannot be avoided by a claim of

fraudulent inducement where the alleged inducement was a promise that directly contradicts or pertains to exactly the same subject matter as the final terms of the contract. Id. at 29, citing *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus. Therefore, the alleged inducement must be extrinsic from the final terms of the contract.

{¶ 22} Here, we find that Licata's fraudulent-inducement claim is based on two distinct representations. The first is that Preston Place would be composed of living quarters and neighborhood retail that would not compete with Licata. The second is that several national anchor stores had signed letters of intent and were committed to becoming tenants within "phase two" of the Town Center development, which was scheduled to break ground in the spring of 2007. Licata introduced multiple pieces of evidence in the form of testimony, maps, and letters as proof of each of the representations. We conclude that the statements and representations regarding the tenant makeup of Preston Place were admissible; however, those regarding future tenants in "phase two" violated the parol-evidence rule and were not admissible.

{¶ 23} Licata asserts that Levis and Hill Partners represented that Preston Place, where C. Sterling Jewelers eventually located its business, would not be occupied by tenants like Licata, but rather by tenants that serve a neighborhood lifestyle. At trial, Licata presented testimony speaking to these representations. Levis and Hill Partners contend that this evidence directly contradicted the exclusive-use provision of the lease, which states:

{¶ 24} "Landlord agrees that during the Term of this Lease (as may be extended) Landlord shall not shall not [sic] enter into a lease with, or permit any space in the Shopping Center to be leased to, an establishment whose primary business is the sale of jewelry or jewelry-related merchandise. * * * Notwithstanding the foregoing, this provision shall not apply to: (i) those tenants occupying or in contract to occupy space within the Shopping Center prior to the execution of this Lease; (ii) *tenants within the retail areas of* Phase Two, The Annex, *or Preston Place in the J. Preston Levis Commons development.*"

{¶ 25} Thus, Levis and Hill Partners argue that in accordance with the parol-evidence rule, statements and representations about future Preston Place tenants should have been barred. We disagree.

{¶ 26} Licata does not contend that the exclusive-use provision should have applied to Preston Place; instead, it contends only that Levis' and Hill Partners' misrepresentation of the nature of Preston Place was a material factor in its decision to enter into the lease. In fact, Licata freely admits that it was aware of the exception to the exclusive-use provision for Preston Place at the time it executed the lease. Licata's complaint is that it executed the lease, containing

the exclusive-use provision, based on representations that Preston Place would not be occupied by competing independent jewelers, but instead would be a "neighborhood or brownstone type of development and that the only retail tenants that would enter that type of development were restaurants, barber shops or other types of retail tenants you would find to facilitate a neighborhood lifestyle." Licata wanted the exclusive-use provision as assurance that it would be the only independent jeweler in the development. In reliance upon Levis and Hill Partners' representation about Preston Place, Licata saw no need to change the language of the provision. Thus, evidence of such a representation does not seek to expand or contradict the exclusive-use provision, but rather speaks to Licata's reasons for signing the lease.

{¶ 27} Furthermore, in order for a representation to contradict the lease, the lease must address the representation, or the exact same subject matter as the representation. Here, the alleged representation was essentially a description of Preston Place and its tenant makeup. However, the lease does not define or describe Preston Place. In fact, outside of the exclusive-use provision, Preston Place does not appear within the lease. For example, Preston Place is not even addressed in the "Basic Lease Terms," which define and describe important terms and titles used throughout the lease such as "Shopping Center" and "Shopping Center Area." Therefore, prior or contemporaneous representations that described or defined Preston Place were extrinsic from the lease and were not in violation of the parol-evidence rule. See *Simon Property Group, L.P. v. Kill*, 3d Dist. No. 1–09–30, 2010-Ohio-1492, 2010 WL 1266835, ¶ 16, concluding that representations by the lessor regarding a future shopping-mall tenant were not embodied in the contract, and thus, the parol-evidence rule did not bar evidence used to prove those representations for the purpose of a fraudulent-inducement claim.

{¶ 28} Accordingly, the trial court did not err in allowing parol evidence into trial that spoke to Levis and Hill Partners' representation about the tenant makeup of Preston Place.

{¶ 29} In contrast, the alleged representation about future "phase two" anchor stores was not extrinsic from the lease terms. Levis and Hill Partners argue that these alleged representations are in direct conflict with and pertain to the same subject matter as the terms of the "No Modification" clause in section 21.14 of the lease. Therefore, Levis and Hill Partners argue that the evidence of such a representation should have been barred because it violated the parol-evidence rule. We agree.

{¶ 30} Section 21.14 of the lease states, "[N]or shall Tenant rely on any representations other than those specifically set forth in this Lease concerning the occupancy or continued occupancy of the Shopping Center * * * or any

proposed tenant for the shopping center." The language of section 21.14 is clear and unambiguous. The representation that Licata alleges pertaining to the occupancy of future tenants in "phase two" of the Town Center is in direct conflict with the final terms of the lease. Thus, any evidence that pertained to that representation is in violation of the parol-evidence rule.

{¶ 31} In its brief, Licata relies on *Simon*, 2010-Ohio-1492, 2010 WL 1266835, in which the trial court found that Simon had fraudulently induced Kill into entering a new lease when it promised him that a new anchor tenant was committed to moving into the same shopping center. The third district affirmed, rejecting Simon's argument that pursuant to the parol-evidence rule, the integration clause contained in the lease precluded evidence from being admitted concerning the alleged promises of an anchor tenant entering the shopping center.

{¶ 32} However, *Simon* differs from this case in a significant manner. The integration clause contained in the *Simon* lease was silent on the subject of current and future tenants. Kill had every right to rely on Simon's representation regarding the new tenant. In contrast, section 21.14 of Licata's lease specifically states that Licata is not to rely on any representations regarding the occupancy of any current or future tenants. Unlike Kill, Licata forfeited his right to rely on any representations pertaining to future tenants within the shopping center when he executed the lease with Levis because any such representations would be in direct conflict with the terms of the lease.

{¶ 33} Accordingly, the trial court erred when it admitted evidence of the prior representation by Levis and Hill Partners regarding the occupancy of future tenants in "phase two" of the Town Center. We must now determine to what extent the trial court's error in allowing parol evidence regarding Levis and Hill Partners' representation as to the future tenants of "phase two" affected the jury's finding that Licata was fraudulently induced.

{¶ 34} Pursuant to Civ.R. 61, when evidence is admitted in violation of the parol-evidence rule, the standard of review is "harmless error." The reviewing court must determine whether the error was either harmless or prevented substantial justice from being done. " 'Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.' " *Cappara v. Schibley* (1999), 85 Ohio St.3d 403, 408, 709 N.E.2d 117, quoting *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus.

{¶ 35} Here, we cannot determine that had the error not occurred, the jury would have probably made the same decision. Both alleged representations support the claim that Licata was fraudulently induced. Thus, to determine whether substantial justice had been done, we would need to examine the extent to which the jury based its findings of fraudulent inducement on each of the representations individually. However, the record contains very little to aid us in making this determination. Consequently, we have no way of knowing how the finding of fraudulent inducement might have been different without the introduction of the inadmissible parol evidence.

{¶ 36} Accordingly, the error by the trial court in admitting evidence relating to Levis and Hill Partners' representation regarding the future tenants of "phase two" was not harmless, and the appropriate remedy is a new trial. Civ.R. 61. Levis and Hill Partners' first assignment of error is well taken.

{¶ 37} In light of our decision, Levis and Hill Partners' second and fourth assignments of error are moot and are not well taken.

{¶ 38} Levis and Hill Partners' third assignment of error alleges that the trial court erred when it denied Hill Partners' motion for summary judgment pursuant to the hold-harmless agreement contained in Schedule E of the lease agreement. However, the hold-harmless agreement specifically states that Hill Partners should be held free and harmless "except for acts of negligence, misconduct, or bad faith." We find that the issue of whether Hill Partners committed negligence, misconduct, or bad faith depends on whether the jury finds that Hill Partners fraudulently induced Licata. Levis and Hill Partners' third assignment of error is not well taken.

{¶ 39} For the foregoing reasons, we reverse the judgment of the Wood County Court of Common Pleas and remand this case for further proceedings consistent with this decision.

Judgment reversed.

PIETRYKOWSKI and SINGER, JJ., concur.